SUPREME COURT. Onondaga General Term, December, 1853
*Gridley, W. F. Allen Hubbard* and *Pratt, Justices.*

JAMES McGUIRE pl'ff in error *vs.* THE PEOPLE def'ts in error.

To give validity to proceedings in the Oyer and Terminer, it is necessary that process for summoning the petit jury should be issued, and that it should also be returned and filed in the office of the clerk of the county.

Where, after a trial and conviction for murder at the Oyer and Terminer, it appeared, on writ of error, that no precept for summoning the petit jury had been returned and filed, the conviction was held to be erroneous and the judgment was reversed.

*It seems*, also, that the issuing of the precept is necessary to give validity to the acts of the grand jury, and that, after verdict, the prisoner may, on error, avail himself of the objection that no precept had been issued for summoning the grand jury. Per *Pratt*, J. (*a*)

Form of an allegation of diminution — *certiorari* issued thereon,—return thereto — joinder in error, &c.— demurrer to joinder and joinder in demurrer.

Error to the Onondaga Oyer and Terminer. It appeared by the return to the writ of error that the plaintiff in error had been indicted, tried and convicted of the murder of James W. Holland, and sentenced to be executed on the 17th of August, 1853. After a general assignment of errors, the plaintiff in error made a special assignment and alleged diminution as follows:

And the said James McGuire comes here into court and alleges that the judgment aforesaid, in form aforesaid given, is erroneous in this to wit:—That no venire or precept was issued by the district attorney of the county of Onondaga to the sheriff of the county of Onondaga to summon the grand jurors by whom the indictment aforesaid was presented, nor was any venire or precept served by the sheriff of the county of Onondaga upon the grand jurors or any return made by said sheriff to such venire or precept as required by statute in such case made and provided, and the said James McGuire also alleges

(*a*) A different opinion is expressed on this point in The People *vs.* Robinson, *infra*

that the judgment aforesaid in form aforesaid given is erroneous in this to wit: That no venire or precept was issued by the district attorney of the county of Onondaga to the sheriff of the county of Onondaga to summon the petit jurors from whom the jury was formed by which the said James McGuire was tried and convicted, nor was any such venire or precept served or returned by the sheriff of the county of Onondaga, as required by the statute in such case made and provided. And the said James McGuire prays a writ of certiorari of the the people of the state of New York to be directed to the justices and judges of the Court of Oyer and Terminer in and for the county of Onondaga, to certify to the said justices of the Supreme Court in and for the fifth judicial district of the said state of New York, the truth of the same, and it is granted to him, &c. And the said James McGuire prays that the judgment aforesaid, for the errors aforesaid, and other errors in the record and proceedings aforesaid may be reversed, annulled and altogether held for nothing, and that he may be restored to all things which he has lost by occasion of the said judgment, &c.

DEWITT C. BROWN, *Att'y, &c.*

LEROY MORGAN, *of Counsel.*

Whereupon a *certiorari* was issued as follows:

The People of the state of New York to the Justices and [L. S.] Judges of the Court of Oyer and Terminer in and for the County of Onondaga, Greeting:—

We being willing for certain causes to be certified whether a venire or precept was issued by the district attorney of the county of Onondaga to the sheriff of the county of Onondaga, to summon the grand jurors by whom a certain indictment for the crime of murder was presented to our said Court of Oyer and Terminer against James McGuire, or whether such or any venire or precept was served by said sheriff on said grand jury, or whether any return to such venire or precept has ever been made by such sheriff, and also whether a venire or precept was issued by the district attorney of the said county of Onondaga

to the sheriff of the said county of Onondaga to summon the petit jurors from whom the jury was formed by which the said James McGuire was tried and convicted, and whether such or any venire or precept was served by the said sheriff upon the said petit jurors or returned by him, do command you, that having searched the files and entries and other records and memoranda of the said Court of Oyer and Terminer, being in your custody of record, what you shall find therein concerning the said several venires or precepts, and return thereof, or either of them you certify, to our justices of our Supreme Court of Judicature in and for the fifth judicial district of the state of New York, without delay, fully and entirely as the same remain in your custody, together with this writ. Witness, Daniel Pratt, Esq., Justice of the Supreme Court at the city of Syracuse, the 12th day of July, A. D., 1853.

BARNARD SLOCUM, *Clerk.*

DEWITT C. BROWN, *Att'y for James McGuire.*

The following is the return to the writ of *certiorari:*

*Supreme Court.*

James McGuire, Pl'ff in Error.          ⎱ In obedience to
          vs.                                                  ⎰ the writ of certi-
The People of the State of New York, Def't in Error.
orari, served upon me in the above entitled action, I do hereby make return thereto as follows:

1st. As to whether a venire or precept was issued by the district attorney of the county of Onondaga, to the sheriff of said county to summon the grand jury by whom a certain indictment for the crime of murder was presented to our Court of Oyer and Terminer, against James McGuire, I return that I have no knowledge.

2d. As to whether such venire or precept was served by said sheriff upon said grand jurors, I return that I have no knowledge.

3d. As to whether any return to such venire or precept has been made by said sheriff, I return that I have examined the

McGuire *v.* The People.

records and files in my office, and I find that no such venire or precept has been returned and filed in my office.

4th. As to whether a venire or precept was issued by the district attorney of Onondaga county to the sheriff of said county to summon the petit jurors from which the jury was formed by which the said James McGuire was tried and convicted, I return that I have no knowledge.

5th. As to whether such venire or precept was served by said sheriff upon the said petit jury, I return that I have no knowledge.

6th. As to whether such venire or precept has been returned or filed in this office, I make return that I have examined the records and files in my office, and find that no such venire or precept has been returned or filed in my office. All of which is respectfully returned.

Witness my hand and seal, this 3d day of August, 1853.

[L. S.]                          BARNARD SLOCUM,
    *Clerk of Onondaga county and ex-officio Clerk of*
            *the Court of Oyer and Terminer therein.*


The joinder in error was as follows:

*Supreme Court.*

The People, Deft's in Error, ⎫
            vs.                  ⎬ Joinder.
James McGuire, Pl'ff in Error. ⎭

And hereupon the said people of the state of New York, who prosecute by R. H. Gardner, district attorney and attorney for said people, defendants in error, thereupon freely come into court and say that by reason of anything for error assigned by the general assignment, and by the special assignment and allegation of diminution, and the return thereof of the clerk of this court to the writ of certiorari, issued and returned in this case, the judgment aforesaid ought not to be revoked, reversed and held for nought, because they say that a precept was issued and delivered to the sheriff of the county of Onondaga aforesaid, by the district attorney thereof, to summon the said petit jurors from whom the jury was formed by which the said

James McGuire was tried and convicted, and which remains on file in the office of said sheriff, and thereof they put themselves upon the country, &c. And because they say that it is not error because the said writ was not filed in the office of the clerk of the said county of Onondaga aforesaid. Nor is it error because no precept was issued and delivered to the said sheriff by the district attorney aforesaid to summon said grand jury of said county, by whom said indictment aforesaid was presented. Nor because the said sheriff did not summon said grand jury by virtue of a precept issued by the said district attorney and return made by said sheriff, and precept filed with the said clerk of Onondaga county. Nor is said judgment erroneous; nor should the same be revoked, reversed or held for nought, for any other allegation, matter or thing alleged for error, and in the said allegation of diminution and for any matter appearing by the return of said writ of certiorari. Nor is there any error in the proceedings or in giving the judgment aforesaid, and they pray that the said Supreme Court may proceed to examine as well the record and proceeding aforesaid as the matters aforesaid above assigned for error, and that the judgment aforesaid in form aforesaid given, may be in all thing affirmed.                    R. H. GARDNER,

*Dist. Att'y and Att'y for Def'ts in Error.*

This was followed by a demurrer and joinder in demurrer as follows:

*Supreme Court,*

James McGuire, Pl'ff in Error,
vs.                                                    } Demurrer to Joinder.
The People of the State of New York, Def'ts in Error.

And the said James McGuire, plaintiff in error, by Dewitt C. Brown, his attorney, comes and says that the said joinder of the said defendants in error to the said allegation of diminution of the said plaintiff in error, and the matter therein contained, in manner and form as the same are above pleaded and set forth, are not sufficient in law to answer the matters set

forth in the said allegation of diminution, or any part thereof, and this the said plaintiff in error is ready to verify.

Whereupon, for want of a sufficient joinder or answer to said allegation of diminution in this behalf, the said plaintiff prays judgment, &c.          DEWITT C. BROWN,
*Att'y for Pl'ff in Error.*

*Supreme Court.*

The People of the State of New York, Def's in Error,     The said peo-
                   ads.                             ple, defendants in
James McGuire, Pl'ff in Error.

error, by R. H. Gardner, district attorney, say that the said joinder and plea to said assignment of error and allegation of diminution and return and the matters therein contained, are sufficient in law to answer the matters set forth in said assignment of error and allegation of diminution and other matters alleged for error to sustain the said judgment, and this the said defendants in error are ready to verify, and wherefore inasmuch as the said plaintiff hath not denied, nor in any manner answered the said joinder and plea in this behalf, the said defendants in error pray judgment, &c.      R. H. GARDNER,
*District Attorney.*

*Leroy Morgan* and *Hervey Sheldon,* for plaintiffs in error.

I. As to the grand jury who found the bill of indictment, it is admitted by the record that no precept was issued to summon them; and as to the petit jury that tried McGuire, it is claimed that a precept was put into the hands of the sheriff, but it is admitted that none was returned or filed in the clerk's office.

II. The claim that one was issued amounts to nothing; for nothing but the record comes up on this motion. It might be proper to consider it on a motion in the court below, to file it *nunc pro tunc* and amend the record.

III. The case therefore stands upon the *naked record,* which shows that no precept or venire process was issued and returned to summon either the grand jury that found the bill of indictment, or the petit jury which tried and convicted the

prisoner. The statute of this state absolutely requires this process. (2 *Rev. St.* 206, § 37 and § 38.)

It is recognized as a process, (2 *Rev. St.* 438, § 69) in the statute, regulating proceedings on the election or appointment of a new sheriff, and is doubtless to be returned by the sheriff with his endorsement of his doings thereon, signed by him. (*See* § 75–77, *of* 2 *R. S.*440, 414; 2 *R. S.* 722, *sec.* 11 *and* 12.)

It was necessary at common law, and is still held necessary except where it is abolished by statute. (1 *Chitty's Cr. Law,* 310, 503; 1 *Spencer,* 218; *Chase* v. *The State.*)

And its omission is fatal to the conviction in this case. (18 *John R.* 212; *People* v. *McKay,* 2 *Southard,* 539; *Nicholas* v. *The State,* 1 *Richardson,* 188; *The State* v. *Williams,* 1 *Spencer,* 218; 1 *R. L.* 328, *sec.* 17; 2 *R. S.* 733, *sec.* 4; *Halsted,* 298.)

IV. The revised statutes abolish this venire process in Courts of Sessions. (2 *R. S.* 724, § 25.) And in civil cases, (2 *R. S.* 410, § 9.)

It being still required in Courts of Oyer and Terminer it can not be dispensed with. This and the other statutes regulating the summoning and return of grand and petit jurors, being *in pari materia,* must be read and considered together. Spencer, Ch. J. in 18 *J. R.* 217.

And in affirmative statutes, such parts of the prior as may be incorporated into the subsequent statute, or are consistent with it, must be considered in force. (3 *How. U. S. R.* 636.)

And every clause and word of a statute shall be presumed to have been intended to have some force. (22 *Pick.* 571.)

If they *may* stand together they *shall.* (4 *Gill. and John.* 1, *and see* 4 *Blackf.* 148.)

*R. H. Gardner,* (District Attorney,) for the people.

I. The precept required to be issued by the district attorney commanding the sheriff " to summon the grand jurors," is merely directory, and the want of it did not prejudice the rights of the defendant, for the following reasons, viz:

1st. This precept is required by the 44th section of chapter 1, title 4, and part 111 of the revised statutes, commanding the sheriff first to summon the jurors who shall have been drawn in his county pursuant to law.

2d. To bring before the court all prisoners in prison, and to bring all process, proceedings, &c., concerning said prisoners, &c.

3d. To make proclamation in the manner described by law, notifying persons bound by recognizance to appear at such court, and requiring all justices of the peace, coroners, &c., to return the writs and precepts in their hands, &c.

This precept has nothing to do with the drawing or summoning either the grand or petit jurors. That is provided for in a separate statute to wit: title 4, chap. vii, part 3, and article 2, page 507 of volume 2 of the third edition of the revised statutes.

If this precept was necessary, the want of it was waived by the defendant in going to trial without objection upon that ground, and it can not be objected in this way that there was any irregularity in the summoning or empanneling of the grand jury. (1 *Selden's Reports,* 531.)

This precept is unnecessary, so far as Courts of Sessions are concerned, and yet the grand jury at the sessions may indict for murder or arson. (2 *R. S.* 724.)

II. The statute of 1813, required the sheriff to summon the jury by virtue of a writ of venire facias, and no drawing then took place. (*Laws of* 1813, *pages* 226, 227, *vol.* 1; *pages* 339, 340, *vol.* 1, *Laws* 1813.)

The manner of summoning jurymen for the Court of Sessions, is pointed out by section 4th of chapter 18, of the laws of 1813, pages 150, 151, vol. 2.)

No venire is now necessary, the same being dispensed with by the laws of 1827, and by the revised statutes. (*Laws* 1827, *page* 312, § 1, 2; 2 *R. S.* 3 ed. *page* 807; *Graham's Practice,* 2*d ed.* 273.)

III. These matters may be amended even* after judgment, where the substantial rights of the party are not injured or preju-

diced. And no pretence is made in this case that the defend-
ant is prejudiced by the omissions complained of. (7 *Wend.*
417, 2 *R. S.* 3d ed. 519; 7 *Cowen,* 382; 4 *Denio,* 68; 4 *Cowen,*
550; *Chamberlain* v. *Spencer.*)

The principle governing in cases of this kind, is that if no
injustice was done the party, the court will not interfere.
(*People* v. *Vermilya,* 7 *Cowen,* 382; 12 *East.* 230; 4 *Barn. &*
*Ald.* 430; 5 *Cowen,* 289; 7 *Cowen,* 232; 6 *Cowen,* 584; 7
*Wend.* 417.)

PRATT, J.—It is conceded in this case, that no precept was
issued by the district attorney for summoning the grand jury,
who found the bill of indictment against the prisoner. The
district attorney has pleaded to the special assignment of error,
that a precept for summoning the petit jury, by whom he was
convicted was actually issued, and that the same is now on file
in the office of the sheriff of the county. It appears, by the
return of the clerk to the certiorari, which was issued to him
upon an allegation of diminution, that no such precept has
ever been returned to the office of the clerk of the court, and
that none is on file in this office. It is insisted by the counsel
for the prisoner, that the mere issuing such precept is of no
avail, but that it must be returned by the sheriff to the court,
that it may be filed and become a part of the record, that the
want of the precept and return in the record brought up, is
error for which the judgment should be reversed.

I am inclined to the opinion, that this position is correct.
The office of the writ of error, is to bring up the record for
the inspection of the appellate court, as well the judgment
record as any of the out branches of the record, which are
claimed to be defective.

The execution of the process of the court, can only appear
by the return of the officer whose duty it is to execute it, and
no action of the court, based upon the execution of such pro-
cess can be regularly taken, until it shall appear by the records
themselves that such process has been duly executed.

Hence it follows, that the regularity of all the proceedings

McGuire *v.* The People.

of the court should appear by the record itself, and, upon writ
of error, if the appellate court upon an inspection of such
record, finds any material defect in it, the judgment should be
reversed.

It is not necessary to decide whether the Oyer and Terminer
might not have allowed a return to have been made and filed
*nunc pro tunc.* No such thing was in fact done, and we must
pass upon the sufficiency of the record as it now is. We come
back then to the question, whether the omission to issue jury
process is a fatal error, for which the judgment of the Oyer
and Terminer should be reversed.

In regard to the precept for summoning the petit jury, the
point has been directly adjudicated in this state, in the case of
*The People* v. *McKay,* ( 18 *J. R.* 212.)

The prisoner in that case, had been convicted of murder at
the Alleghany Oyer and Terminer. It was moved upon a re-
turn to a certiorari, showing that the precept for summoning
the petit jury was without seal, and that no return had been
made to it by the sheriff, that the judgment be arrested.

The motion was granted by the Court, Ch. J. SPENCER,
giving the opinion.

It will be seen by examining the statutes in force at that
time, and comparing them with the Revised Statutes, that they
were substantially the same so far as they affect the question
under consideration. (*See* 2 *R. L.* 508, *sec.* 13, 24 *to* 30; 1
*R. L.* 328; *sec.* 11 *and* 19; 2 *R. S.* 206; *sec.* 37 *and* 38; 1 *R.
S.* 339; *sec.* 15 *and* 16.)

Precisely the same answers were made to the objection upon
the argument in that case that were made upon this, to wit:
that the jury were drawn and summoned pursuant to specific
directions in the statute, and that a precept was therefore a
mere matter of form. But the court in that case held the
objection fatal, and arrested the judgment. The case was
argued by very able counsel on both sides, and after careful
deliberation, the decision, for aught that appears in the report,
was made by the unanimous concurrence of all the members of
that very able court. We should not, therefore, even if we

doubted its correctness, feel at liberty to overrule this decision; but we are satisfied that it is well sustained upon authority.

At common law, a precept to summon the jury was always necessary. (1 *Chitty Crim. L.* 505, 508.) The different courts had different kinds of process, but in all the courts, process of some kind was absolutely essential. It was the authority under which the sheriff summoned the jury, and it was only upon the return of the process, that the court acquired jurisdiction to impannel the jury and try the cause. In some of the courts a special *venire* was necessary in each case, but before the justices of jail delivery, a general precept was issued upon which a jury of a given number were summoned, out of which a panel for the several cases as they were tried, was awarded orally, thus conforming somewhat to our own practice. (1 *Chit. Crim. Law,* 506.)

Our statute, so far from dispensing with this process, peremptorily directs it to be issued by the district attorney of the county, at least twenty days before the time of holding any court of Oyer and Terminer, and in every such precept, the sheriff is commanded, among other things, "to summon the persons who shall have been drawn in his county pursuant to law, to serve as grand and petit jurors at the said court, to appear thereat." (2 *R. S.* 206, § 37, 38.) This precept is still, therefore, retained as the authority to the sheriff; and for disobedience to this, he may be attached or otherwise made amenable for neglect of duty.

Upon the opening of the court, when proclamation is made for him to return the writs and precepts delivered to him, it is his duty, if he has not before returned it, to return it then. These provisions for returning the jurors by officers of towns, and for drawing the same by the county clerk and other officers, are made for securing the attendance of competent jurors, as well as for equalizing the burthen of jury duty among all the competent citizens of the county, but they do not in any wise affect the necessity of vesting the sheriff with competent authority to summon them and the court to impannel them. Similar provisions are contained in the English statutes, for

securing the attendance of competent jurors, and for equalizing the burthen of jury duty; but it was never supposed that such provision obviated the necessity of jury process. And a late English writer, in speaking of jury process in civil actions, remarks " that though the making out the jury process, getting it duly returned and annexed to the record, is now little more than a form, it is a form, the observance of which is so essential, that if it be neglected, there can be no valid trial of the cause." (*Smith on Actions at Law*, 125.)

Suppose the sheriff had entirely neglected to summon the jury, and that they had come together of their own accord, could a valid trial have been had in such a case? It seems to me very clear, that there could not have been a valid trial before such a jury, yet this record furnishes no evidence that the jury were not thus impanneled in this case. It is said that the legislature has abolished jury process in courts of Sessions and in civil cases. But this fact, instead of affording an argument in favor of the right to disregard the statute requiring process to be issued for summoning jurors for courts of Oyer and Terminer, affords an argument on the other side. The fact that the legislature has retained it for the latter courts, while it has been abolished for the former, shows that the distinction was designed; and it is not for the courts to decide what the statute peremptorily enjoins may be dispensed with as a mere matter of form and as unnecessary. If the abolition of such process is found to work well in courts of Sessions and in civil cases, the legislature may hereafter extend it to all the courts; but until that shall be done by legislation, we must follow the well settled rules of law in relation to it.

That the defect is vital and constitutes error in the record, for which the judgment should be reversed, is settled by repeated adjudications, both in this country and in England.

In *State* v. *Williams*, (1 *Rich.* 188,) in the Court of Appeals of South Carolina, there was a motion in arrest of judgment, on the ground that the grand jury who found the bill, and the petit jury who convicted the prisoner, were summoned by writs of venire without the seal of the court. The motion was

granted, and the judgment in this, as well as in three other cases in which the defendants had been indicted and tried by the same jurors, was arrested.

In a previous case, *The State* v. *Dazin,* (1 *Spears,* 211,) the prisoner was convicted of murder, and the same objection was taken, with the same result. I have not had access to the statutes of that slate, but from what was said in the case of the *State* v. *Crosby,* (2 *Harper,* 90,) they provided for drawing the jury somewhat in the manner provided by the statutes of this state. It is said in that case, that the important object of obtaining an impartial jury is secured by the manner of drawing them, which is not affected or controlled in the least by the manner of summoning them; that the writ of venire was the authority of the sheriff, and, as the process of the court, merely secured the attendance of the jurors. (See also *State* v. *McElmundy,* 1 *St. Tr.* 33.)

The case of *Rogers* v. *Smith* and another, in the King's Bench, (1 *Ad. & El.* 772,) was a civil case, but particularly applicable to the point now in question. For it would scarcely be contended that less regard should be paid to errors of this kind in criminal than in civil cases, especially when life is involved. That was a writ of error *coram nobis,* and the error assigned was that there "was no return of the *distringas juratores* by the sheriff or other officer therein mentioned, nor any panel of the jurors returned and annexed thereto." In England, in the Queen's Bench, there are two writs issued; the *venire facias,* which is made returnable at the court at Westminster, and the *distringas juratores,* which is made returnable at court on a day therein named, unless sooner, &c.

The former of these writs the sheriff does not execute, but makes out a panel of the jurors and returns the names, (*Smith on Actions at Law, p.* 219) Upon the issuing of the *distringas* to the sheriff, he summons the jurors whose names he has returned on the panel, and returns the same to the court with the panel annexed. In the case above cited, the error alleged was that the sheriff had made no return to the *distringas,* nor annexed thereto a panel of the jurors,

McGuire *v*. The People.

The Court of Queen's Bench reversed the judgment. Lord Denman, delivered the opinion of the court, and held that at common law, the want of a return or a defective return was error. (*See also Cro. Eliz*, 311; *ib*. 587; 3 *Buls*. 220; *Cro. El.* 509; 1 *Roll*. 295; *Hob*. 130; *Cro. Jac*. 188.)

It appears from the remarks of the author in Smith on Actions at Law, above cited, that the issuing of these writs is mere matter of form. He says, " in fact they are now little more than forms, for by 6 Geo. 4, C. 50, sec. 15, the sheriff is obliged to return the same panel of jurors for the trial of all common jury causes, instead of being allowed as he anciently was, to return any duly qualified persons he pleased; so that the opportunity for investigation is now given in another way, and any body may know long before the day of trial, the names of the jury specified in this panel." It will also be noticed by examination, that the English statute of amendments is much broader and more extensive than our statute of amendments, applicable to criminal courts. (*See also Beekman* v. *Rye*, *Cro. Eliz*, 587; *Rowland Case*, 5 *Rep.* 416; 3 *Buls*. 220; 5 *T. R.* 462.)

Upon the defect in the want of a venire for summoning the grand jury, it is not necessary to pass. Judge Nelson held in the Circuit Court of the United States, in the Jerry Rescue Cases, that our statute which takes away the right of challenge to the array of grand juries, had, by implication, taken away the right to raise the objection in any form. If an objection exists to the summoning of the jury, which, previous to our revised statutes, would be a good objection on a motion to quash, or upon a writ of error, and which might also be a good objection as a ground of challenge to the array, I do not clearly perceive how the taking away the rights of challenge to the array for such cause, would necessarily deprive the party of his other common law remedies.

It seems to me it would rather strengthen his right to avail himself of his other remedies. The right of trial by jury, as well as the exemption from being held to answer for crime, unless upon presentment of a grand jury, is the boast of the

common law, and is guarantied by the fundamental law of both the state and national governments.

That these juries should be composed of impartial and competent men, has been the constant care of both legislatures and courts during the whole history of the. common law. And the citizen has not been compelled to rely alone upon the fidelity of public officers to secure this right, but he has always been allowed to watch the proceedings himself.

He has always been allowed the largest liberty in availing himself of any defect in the proceedings, or in any want of conformity to the prescribed forms of procedure. It is true that the legislature have removed many of these old land marks of the common law, have abolished many of those writs and processes, which were once deemed essential. Yet the courts are to follow the legislature and not anticipate its action. They should not by judicial decision, attempt to abolish those remaining requirements of the common law which the legislature have thought best to leave unmolested.

Suppose in drawing a grand jury under our statute, the clerk or some one else, should so arrange the ballots in the box that the names of persons hostile to the accused would most certainly be drawn. This would not under our statute be a cause of challenge to the array.

But is there no remedy for the accused in such case? The right of challenge to the grand jury is practically of little importance, for in many cases the accused has no knowledge that any proceedings are pending against him, until the indictment is found. But the right to object to the proceedings after the indictment is found, is one of the most important rights secured to the citizen.

The fair inference it seems to me to be drawn from the consid-eration of the whole subject, is, that the legislature took away the right of challenge to the array, for the reason that it was of no practical benefit, designing to leave all the other common law rights of the accused unimpaired. But it is not necessary in this case to place our decision on the ground of the want of process to summon the grand jury.

We are satisfied that the objection in regard to the want of process for summoning the petit jury was fatal, and the judgment of the Oyer and Terminer, must be reversed.

We will award a *venire de novo,* but we think the safer course for the district attorney would be to procure a new indictment to be found.

GRIDLEY and W. F. ALLEN, JJ., concurred. HUBBARD, J., dissented.

Judgment reversed.

SUPREME COURT. Tioga General Term, May, 1854. *Crippen, Shankland, Gray* and *Mason, Justices*