## COURT OF OYER AND TERMINER.

### THE PEOPLE agt. JAMES NAUGHTON.

The court of oyer and terminer is the highest court of criminal jurisdiction, and
has power "to inquire by the oath of good and lawful men of the same county,
of all crimes and misdemeanors committed or triable in such county ; and to hear
and determine all such crimes and misdemeanors."

It also has the power to compel the district attorney to furnish a *list of the witnesses*
examined before the grand jury, and to allow the accused or his counsel to ex-
amine the minutes made by the grand jury in finding the indictment, the same
being in the hands of the district attorney.

Where the accused has had no *preliminary examination,* it is proper that he should
have a *list of the witnesses* upon which an indictment is found against him.

While it is undoubted that a district attorney may prefer an indictment, without
binding the party over, it is not the policy of the law that he should have it in
his power to prevent the accused from making a defense.

There is no *secrecy* imposed upon a *witness* before a grand jury, either as to the fact
of his being called before them, or as to what he testifies to. The minutes of the
evidence taken, are given to the district attorney ; which seems conclusive that
the names of the witnesses and their testimony before the grand jury, are not mat-
ters required by law to be kept secret.

The principle underlying all our criminal jurisprudence, is, that the accused shall
have a *fair and impartial trial.* And this means that there shall be no surprise
or undue advantage taken.

The *indictment* may not furnish the time, within several months, or the place
except the name of the county, nor the witnesses upon whose tesimony it is
found.

In this case, that part of the motion asking for the names of the witnesses upon the
indictment, was granted ; and that part asking for copies of all minutes made in
the grand jury room when said indictment (for violation of the election laws)
was found, was denied, for the reason that the motion papers did not state facts
sufficient to warrant such an order.

*Kings, Oyer and Terminer, March,* 1870.

INDICTMENT for violation of election laws.

THIS is a motion on part of defendants, to compel the
district attorney to furnish a list of the witnesses examined
before the grand jury, and to allow the accused or his coun-
sel to examine the minutes made by the grand jury in

finding the indictment, the same being in the hands of the district attorney.

S. D. MORRIS, *district attorney, for people.*
WINCHESTER BRITTON, *attorney and counsel for defendant.*

*First.* It is within the power and province of the court, to grant this motion.

I. The court has general and entire control over the grand jury and its proceedings. (1 *Bish. Cr. Pro.,* §§ 142 *and* 738).

II. The secret feature of the grand jury which in some of the states does not prevail, (1 *Bish. Cr. Pro.,* § 728,) is based wholly upon grounds of public policy and has frequently been relaxed, when public policy required it, or when public policy no longer required its enforcement, and private rights demanded its relaxation. (*Burnham* agt. *Hatfield,* 2 *Blackf.,* 21).

The jurors are sworn to secrecy, "unless called on in a court of justice to make disclosures." (*Oath of grand jury,* *Wilson's Am. Juror, p.,* 179). The R. S., provide only for secrecy, in case of felony, until the defendant shall have been arrested, (2 *R. S.,* 726 § 39; 3 *R. S.,* 1018 5*th Ed.*)

It has never been strictly enforced, except in so far that grand jurors have never been asked to disclose, how they voted upon any particular indictment, or what opinions they expressed during their deliberations. (*People* agt. *Young,* 31 *Cal. Rep.* 563; 1 *Bish. on Crim. Pro.,* § 729 *and note* 4; 2 *R. S.,* 725 § 33, § 31, *p.* 1016, 3*d Vol.* 5*th Ed.*; *Shaftbury's case cited,* 2 *Hale's Pleas,* 161 163).

1. Any person indicted has a right to object to the proceedings of a grand jury, if the indictment against him was irregularly or illegally found; for instance, if found by an insufficient number, or if the witnesses examined before it were not sworn, or were sworn by some person other

than its foreman, or if the grand jury were sitting after the court to which they were attached had adjourned, or for any other cause, tending to show the invalidity of the indictment.

The citizen has always been allowed the largest liberty of availing himself of any defect in the proceedings of the grand jury, or in any want of conformity to the prescribed forms of procedure. (*McGuire* agt. *People*, 2 *Park. Cr. R.*, 162 ; 2 *Park. Cr. R.*, 309,) and the right to object to the proceedings after the indictment is found, is one of the most important rights secured to the citizen (2 *Park. Cr. R., ante*).

To enable such objection to be made, it is essential that the defendant has the means of obtaining knowledge of such irregularities.

2. It was formerly customary to swear and examine witnesses in open court. (2 *Hale's Pleas* 161 ; *note* 2 *Hale's Pleas* 164).

Such is now the rule in England except when provided otherwise by statute, and in Pennsylvania, while they are sworn in Connecticut by a justice of the peace, and then the prisoner may be present during the examination of witnesses. (*State* agt. *Fasset*, 16 *Conn. R.*, 457, 469) ; when witnesses are so sworn in open court, the public has an opportunity of knowing what witnesses are sworn, and in the latter case the knowledge is extended beyond the grand jury and the district attorney, or his representative, under no injunctions of secrecy on them. It is also the practice in England to indorse upon the indictment the names of the witnesses, upon the testimony of whom the indictment was found, and such is the rule in some of the United States.

In Massachusetts it is held to be the absolute right of the defendant to be furnished with the names of the witnesses. (*Com.* agt. *Knapp*, 9 *Pick.* 498 ; *Com.* agt. *Locke*, 14 *Pick.*, 485 ; *Com.* agt. *Walter*, 17 *Pick.*, 403).

In this state witnesses were sworn in open court until

1813, when by statute, the power to administer the oath, for convenience, was given to the foreman of the grand jury. Surely that act did not deprive the prisoner of an existing right, in a proper case, (if in any case,) of knowing the names of the witnesses.

3. Nor is there any good reason why the prisoner should not be permitted to know the testimony, when it seems reasonable in order to enable him to prepare for trial.

*a.* There are no grounds of public policy against it, as on preliminary examinations before a magistrate, the testimony is publicly given.

*b.* On an indictment of a witness sworn before the grand jury for perjury, it is competent to call a grand juror to show what his testimony was before the jury, otherwise no such indictment could even be tried. (*Crocker* agt. *State Meigs.*, 127; *Wharton's, Cr. L.*, 130).

*c.* On the trial of the issues found under the indictment, it is competent to show that a witness there sworn, testified differently before the grand jury, and it is a competent and common practice to question such a witness, as to his testimony before the grand jury. (3 *R. S. p.*, 1016 *sec.*, 31, 5th Ed.; *Wharton's Cr. L.*, 130).

*Second.* The motion should be granted.

I. Ater the defendant has been arrested on a bench warrant there is no public policy forbidding him to become possessed of such information.

Public policy does not demand that a prisoner shall not have a fair chance to prepare and make his defense. In this country individual rights are held to be of some value, and men are not supposed to be convitced of offenses by any secret and star chamber proceedings, depriving them of a full and fair opportunity to make their defense. (*See Wharton's Am. Cr. L. p.*, 116, *note*).

II. The secret feature of the grand jury is not in harmony with the policy of this government or its judicial institutions and should not be extended.

III. The present case is one which fairly invokes the .discretion of the court to make this order.

1st. The defendant had no preliminary examination. (*See Wharton's Cr. L. p.*, 116 *note*).

2. He shows that a knowledge of these facts are essential to make his defense.

3. The district attorney, who is possessed of the minutes of the grand jury refuses to furnish these particulars.

4. The prisoner has been arrested on a bench warrant and allowed by the district attorney to go at large, showing that he has no fear but his presence at the trial will be secure.

5. The crime charged is of not so high a grade, or of such a nature, nor alleged to have been committed under any such aggravated circumstances as to call for vindictiveness, or exceptional treatment on the part of the officers of this government. It is a notoriously common practice for the district attorney of this county to allow a prisoner to become possessed of this information before or at his trial.

PRATT, J.—The motion papers set forth that the accused was indicted without any preliminary examination before a magistrate; that he has no means of knowing the particular time, place or circumstances relied on by the people; that at different times during the day upon which the charge is laid, a large number of persons were present at said voting place, and unless he can ascertain the precise time at which he is charged to have committed the offense, it is impossible for him to determine what witnesses to summon in his defense, or in any manner to prepare for trial; that important irregularities occured in the proceedings of said grand jury, fatal to the validity of the indictment, which said minutes will disclose; that he has demanded the list of witnesses and the inspection of the minutes of the district attorney and been refused. None of these allegations are denied on the part of the people.

People agt. Naughton.

The power of this court to entertain and decide these questions cannot be contradicted.

The court of oyer and terminer is the highest court of criminal jurisdiction, and has power "to inquire by the oath of good and lawful men of the same county, of all crimes and misdemeanors committed or triable in such county; and to hear and determine all such crimes and misdemeanors."

This motion does not seek to review any prior determination made in the court of oyer and terminer, but to have the court act upon an indictment now pending therein.

The grand jury is a constituent part of the court of oyer and terminer, and its proceedings are a part of the proceedings of the court of oyer and terminer. The court "inquires" by the grand jury, and "tries and determines" with the petit jury.

It has been repeatedly held that when the grand jury is in session it is completely under the control of the court, and the court can at any time re-commit an imperfect finding, or may take measures, on the suggestion of a defendant, to determine whether twelve assented to the bill. (*State agt. Squire*, 2 *N. H.*, 558; *Lewis case* 4 *Greene* 448; 1 *Bish. Cr. Pr. sec.*, 142–738).

If then, a defendant while a grand jury is in session, can raise this issue and the court can determine it, why not at any subsequent time prior to trial, as the grand jury ( as in this case they did) may have adjourned before the accused knew he was indicted? That the right to raise the question is necessary to the protection of the innocent and is simple justice, needs only to be stated to appear. If the accused upon good cause shown may demand the list of witnesses examined, it follows that the court not only has the power but must make the order. Can it be tolerated that the court which "inquires" into all offenses and tries all indictments, cannot also determine whether a paper placed upon

the files of the court is an indictment or not? A charge does not become an indictment until it is legally found.

Suppose the grand jury were not sworn, or that the witnesses were not under oath, or that less than twelve concurred in finding a bill, or suppose the accused comes into court and offers to prove by the foreman that the indictment was never before the grand jury, that what purports to be the signature of the foreman is a forgery, are these not matters to be heard in this court, and is there any other tribunal before which they can be heard in the first instance, and may not the court resort to the minutes of the grand jury for evidence to determine them, or take any other course not in violation of the jurors' oaths? To hold the court had no power in such cases would be subversive of justice.

There are sound reasons of public policy why the courts should have the power of passing upon the questions raised upon this motion.

Abuses have become frequent in the grand jury system, and in many instances great injustice has been perpetrated upon individuals. Many indictments are found that are never brought to trial, many innocent persons are indicted, when if sufficient scrutiny had been observed, an indictment would never have been found.

Many cases are to be found where parties who have been defeated in a prosecution before an examining magistrate, have presented themselves before a grand jury, and upon a one sided statement procured an indictment.

Judge BARRETT in a recent paper upon this subject holds the following language :

" This body was formerly supposed to be one of the bulworks of liberty. If so, its day is surely past, for it has come to be regarded as a mere adjunct to public prosecutors, a cumbersome machine for the grinding out of questionable indictments, a vast political power, and in bad or unscrupulous hands, an engine of oppression, wrong, and outrage. Witness the spectacle, neither impossible nor unfrequent, of

People agt. Naughton.

a grand jury in secret session in one room, and a petit jury impanelled in another, a public prosecutor hovering over the two, and perhaps influencing both ; citizens indicted by the one, and brought to trial upon short notice before the other.    All this, with or without the incident of but a single appeal to the judge who tries them.    Here is a spectacle with the action of which angels might perhaps be trusted, but, where common mortals alone appear upon the scene, fraught with danger to our liberties and subversive of our dearest rights."

The members of this body are selected from the mass of the people and assume their duties possessing the passions, prejudices and excitements common in the community at the time of their service.    When their duties are ended they return to the mass of the people, intangible for any of their official acts ; within the  sphere of their duties they are omnipotent.    It is not pretended that any power can control them in the performance of their *duty*, but the power should and does reside in the courts, of which grand jurors are a constituent part, to inquire whether the grand jury have performed their duty, or whether they have exceeded their powers.    Every member of the community is interested in preserving the grand jury system in its purity and usefulness.    It must retain the confidence of the people, and stand upon the ground of vindicating the public law; to do this, it must be a judicial tribunal, acting strictly within the principles upon which it was originally based.

Assuming that the court has ample power to decide the questions raised by the motion, the question is, shall the accused, upon these motion-papers, have a list of the witnesses examined before the grand jury ?

It may not be improper, in discussing this question, to allude briefly to the principles involved in the grand jury system.    The grand jury had its origin at a time when there raged a fierce conflict between the rights of the subject and the power of the crown.    It was established to secure to the

subject a right to appeal to his peers, under the immunity of secrecy and irresponsibility, before the government could bring him to trial. It was a right wrung from the government to secure the subject against oppression.

The principles of secrecy and irresponsibility were incorporated into the system at the instance, and for the protection of the subject.

The constitution of the United States, and the constitution of all the states, show that it is adopted here as a means of protection to the citizens, as well as a necessary aid to public justice. The statutes of this state are full and explicit in defining the rights of the citizens, and of the people, and the functions of the grand jury, and are entirely consistent with the principle before stated. (2 *Rev. Stat.,* 748, *sec.,* 33, *Ed's Ed.*)

The question is now presented, shall a principle established for the protection of the citizen be used by the government to oppress him? The answer is self evident. That there is no sound reason why the accused should not have a list of witnesses, is evinced by the fact that the law provides for a preliminary examination where the prisoner not only has an opportunity to see the witnesses, but to cross-examine them, and as matter of every day experience, a large majority of cases are examined before a magistrate. It can be reasonably inferred from these statutory provisions that it is proper the accused should have a list of witnesses where there has been no preliminary examination. While it is undoubted that a district attorney may prefer an indictment without binding the party over; it is not the policy of the law that he should have it in his power to prevent the accused from making a defense. It is not the usual course to first present the case to the grand jury, and while we may believe that this case may be one of a nature requiring such action, yet the accused should not be deprived of all legitimate means of defending himself.

Says a learned commentator: By the opportunity given

to the accused, of hearing and examining the prosecutor and his witnesses, he ascertains the time, place, and circumstances of the crime charged against him, and thus is enabled, if he is an innocent man, to prepare his defense, a thing of the hardest practicability if a preliminary hearing is not afforded to him ; for how is an accused person effectively to prepare his defense unless he is informed, not merely what is charged against him, but when, where, and how, he is said to have violated the public law. It is not true that a bill of indictment furnishes him with this vital information. It practically neither describes the time, place, or circumstances of the offense charged ; time is sufficiently described if the day on which the crime is charged is any day before the finding of the bill, whether it is the true day of its commission or not. Place is sufficiently indicated if stated to be within the proper county, where the indictment is found; and the circumstances are adequately detailed, when the offense is described according to certain technical formula.

Hence the inestimable value of preliminary public investigation by which the accused can be truly informed before he comes to trial, what the offense is he is called upon to respond to. It is by this system that criminal proceedings are ordinarily originated. When we consider the course of practice in finding indictments (at the time the statutes were passed) in connection with the words used in the statutes, a strong inference can be drawn that it was a conceded right of the accused to have a list of the witnesses. (2. Rev. Stat., 752, sec., 55, etc. etc). It was customary in many counties in this state prior to the passage of above statute, for the prosecuting officer to draft the indictments in his office, indorse thereon the names of the witnesses, and send the same to the grand jury to be investigated.

The names of the witnesses were regarded as much an indorsement, as to words "true bill," and hence we

find in the statute above referred to, the provision that the accused shall be entitled " to a copy of the indictment. and of all indorsements thereon."

It is also fair to presume that the oath taken by the grand jury covers all matters required by law to be kept secret, except such matters as are specially prohibited by law.

The oath is, "the counsel of the people, your fellows, and your own you will keep secret;" and the test upon the question, whether matter is privileged or not, is, does it transcend the oath ?

The oath does not apply to matters of fact shown to the grand jury. (*L.* KENYON, *in Sykes* agt. *Denton,* 2 *Selw. N. P*).

PARK *J. Freeman,* agt. *Askeel* (1 *C. and P.* 137; 4 *Chit. Cr. L.* 183, *C. S. Y.*; *Law* agt. *Scott,* 5 *Har. & J.,* 438. *Huzedekossr* agt. *Cotton,* 4 *Watts,* 56, 57, 58; *Whart Sel. N. P.* 815).

The only secrecy that has been strictly enforced in this country or in England in the grand jury system, is that contained in the oath and statutes. (*People* agt. *Ganv,* 31 *Cal. Rep.* 563; 1 *Bish. Crim. Pro. Ser.* 729; 2 *Park. C. R.* 162; 2 *Hale's P. C.* 161).

There is no secrecy imposed upon a witness before a grand jury, either as to the fact of his being called before them, or as to what he testifies to.

The minutes of the evidence taken are given to the district attorney. This seems conclusive that the names of the witnesses and their testimony before a grand jury are not matters required by law to be kept secret.

Judge WILDE, in granting the application for a list of witnesses in the case of *Ceruth* agt. *Knapp,* stated that he never knew a case where it was denied. (9 *Pick.* 498; 14 *Pick.* 485).

(*Earl of Shaftsbury's Case : Howell's State Trials Vol.* 3). In this case an effort was made by the crown lawyers to

procure an indictment for high treason against the Earl. The Earl applied to have the witnesses before the grand jury examined in open court, and in his presence.

The objection was taken that the oath of the grand jury bound them to secrecy, but the court held that that objection might be removed, and made the order accordingly. The witnesses were so examined, and the grand jury indorsed *ignoramus* upon the bills. Commentators say that this proceeding, in all probability, saved the life of an innocent man.

That there was never any secrecy in this country in regard to who testified before a grand jury is shown by the fact that until recent statutes were passed, giving the foreman power to administer oaths, the witnesses were sworn in open court, and such is the custom now in many states, and in some of the circuit courts of the United States, and in some of the states the accused may be present at the examination of the witnesses. (16 *Term*, 57–469). It could not have been intended by the legislature, in giving a governor a right to administer an oath, to take away an existing right of the citizen. It is as much the duty of the state to protect the liberty of the individual as to punish the offenders against the law. If this was a question entirely new to our courts, there could be no doubt in regard to it.

The principle underlying all our criminal jurisprudence is, that the accused shall have a fair and impartial trial. The law presumes him innocent until after verdict of guilty. It gives him a right to testify in his own behalf; does it not also presume he will not suborn witnesses, or do any other unlawful acts? In order that a prisoner may provide witnesses for his defense, the law provides that he shall be tried at the place where the offense is committed.

What is a fair and impartial trial? The phrase means there thall be no surprise or undue advantage taken.

Is it fair that he should not know when and where he is charged to have broken the law, and who are his accusers? The indictment, as we have shown before, may not furnish the time within several months, or the place, except the name of the county, nor the witnesses upon whose testimony it is found. Suppose the witnesses who appeared against him before the grand jury were infamous, what opportunity has he to impeach them if he cannot know who they are until they are placed upon the stand before a petit jury—or suppose they have a bias against the prisoner, should not the accused have a right to show these facts before a petit jury? A prisoner would not have a fair trial if this was denied to him, yet practically he cannot show these facts unless he can know who the witnesses were, and what was their testimony.

There can be no good purpose subserved by preventing an accused from having this information.

Where a person is examined before a magistrate, he not only can appear by counsel and cross-examine the witnesses, but is entitled to produce his own witnesses, and take down in writing the examination, and all the examinations must be certified to by the magistrate to the court—(2 *Rev. Stat.*, 729).

Analogies are not wanted in civil practice to show how the rights of parties are protected against surprise and undue advantage; the bill of discovery, the examination of the opposite party before trial, the motion to make the complaint more definite and certain, the demand for bill of particulars, the inspection of books and papers, are wise provisions to protect suitors. It cannot be said that the law, so careful of rights of property, contains nothing for protecting the liberty of the citizen. That there is no principle of secrecy, except such as is before stated, standing between the accused and his defense, is further shown by the fact that it is the duty of the court to resort to the minutes of evidence taken before the grand jury in deciding

questions of bail. (*See People* agt. *Van Horne*, 8 *Barb.*, 164). That part of the motion asking for the names of the witnesses upon this indictment must be granted. That part asking for copies of all minutes made in grand jury room when said indictment was found is denied, for the reason that the motion papers do not state facts sufficient to warrant such an order. They do not state wherein any of the proceedings of the grand jury were irregular, so the court can judge whether it is a matter competent for the defendant at this time to challenge or investigate, or wherein an inspection is essential to protect any right of the defendant, or wherein the non-production of the minutes will work an injustice, or that he cannot more properly derive all the information he seeks from other sources. Before the court order the district attorney to produce any paper which he has deemed it his duty to withhold, the party seeking such an order must bring himself strictly within the laws. It may also be said that it does not appear from said motion papers, but that all that appears on said minutes may be matters required by law to be kept secret.

Neither does it appear that said minutes contain one item of matter to the possession of which the defendant is entitled, in order to prepare for trial.

The court cannot permit the said minutes to be used to disclose how any juror voted, or what was said by any juror during their deliberations, or to impeach a regular finding of a grand jury. It is only within certain restrictions that any inspection of the minutes can be allowed. The accused not having brought this branch of his motion within the rule, it is denied.