## Chicago City Ry. Co. v. John Anderson.

1. Instructions—*Limiting the Duty of a Motorman, When Properly Refused.*—An instruction in an action for personal injuries against a street railroad company, which limits the duty of the motorman in the exercise of ordinary care when approaching a street crossing, to the instant he notices that a person in charge of a team intends to drive across the track, is properly refused, as it excludes from consideration the question as to whether the motorman, prior to that instant, had been

exercising ordinary care in the operation of the car while approaching the crossing.

2. TRIALS—*Temporary Absence of the Trial Judge.*—The temporary absence of the judge during the progress of a jury trial, when not prejudicial to a party complaining, is not reversible error.

3. DAMAGES—*When $7,500 is Not Excessive.*—A man about forty years of age, injured by a collision between the wagon he was driving and a street car, was healthy, strong, active and capable of hard manual labor, had been, for thirteen years, employed by a single firm as a teamster, and earned $12 a week. After the injury he first had pains in his stomach, breast and back; the pain in his back continued, and afterward he had pains in his legs so that he could use them but very little; he could not urinate or evacuate without taking medicine; he had been in bed nearly all the time since the injury and was not out of the house until brought out to attend the trial of his suit. He had lost forty pounds in weight and was unable to work. It was held that a verdict for $7,500 did not indicate prejudice, passion or partiality on the part of the jury and was not excessive.

Trespass on the Case, for personal injuries. Appeal from Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the March term, 1900. Affirmed. Opinion filed March 5, 1901.

WILLIAM J. HYNES and SAMUEL S. PAGE, attorneys for appellant; MASON B. STARRING, of counsel.

HAMLIN & BOYDEN, attorneys for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment for $7,500 rendered in favor of appellee and against appellant in an action of case, for personal injuries alleged to have been occasioned by appellant's negligence.

Appellant's objections are exceedingly numerous, going to almost everything which occurred in the course of the trial. They may be summarized as follows: The verdict is against the weight of the evidence; the court erred in modifying some and refusing other instructions asked by appellant, and in giving certain instructions asked by appellee; in admitting improper and excluding proper evidence, and in unreasonably limiting argument, and in

refusing to consider certain affidavits in support of the motion for new trial. Exception is also taken to the conduct of the presiding judge on the trial, and to remarks of appellee's attorney in argument to the jury. The evidence is that October 1, 1897, about six o'clock in the evening, appellee was driving north on Clark street, in the north-bound track of appellant, a team of horses attached to a wagon loaded with baled hay. The weight of the wagon was 2,600 pounds and of the load of hay 8,400 pounds. Each bale weighed from 140 to 150 pounds. The bales were piled four high on the wagon, and appellee was sitting on top of the bales while driving. There was another train of appellant following the wagon on the north-bound track, ringing a bell, apparently as a signal to appellee to turn out of the track. When appellee reached the intersection of Harrison street (an east and west street) with Clark street, he turned his horses to the left across the south-bound track of appellant, to go west on Harrison street, but before the wagon got across the south-bound track a south-bound train of appellant collided with it and tipped it over, and appellee was thrown to the ground and was seriously injured. The evidence tends to prove that one or more of the bales of hay fell on him. About fifty-five witnesses were examined on the trial, some of them at great length. There was considerable conflict in the evidence, and therefore the case was one eminently proper to be submitted to the jury on the questions of fact. Having carefully read and considered all the evidence and the elaborate arguments of counsel, we can not sustain the contention that the verdict is contrary to the weight of the evidence.

We find no error in the instructions given at appellee's request, or in the modification of instructions requested by appellant and the giving them as modified. The court gave forty-five instructions for appellant, and it would seem that so many instructions should, if they did not, cover every phase of the case; but counsel object to the refusal of instructions 46, 47, 48, 49, 50, 51, 52, 53 and 56. These

refused instructions, except instructions 51 and 53, are included, in substance, in instructions given, namely, 46 in instruction 24; 47 in instruction 28; 48 in instruction 37; 49 in instruction 28; 50 in instructions 16 and 22; and 52 in instruction 23. Instruction 51 is an abstract proposition and was properly refused. Instruction 53 limits the duty of the motorman to the exercise of ordinary care in approaching Harrison street from the north, to the instant that he might have noticed that appellee intended to drive across the south-bound track, thus excluding from consideration the question whether the motorman, prior to such instant, had been exercising ordinary care in the operation of the car while approaching the Harrison street crossing. Refused instruction 56 is included, in substance, in instruction 27. We think the instruction was properly refused.

Counsel for appellant, by permission of the court, went into another court room to attend to another matter, and was absent for a few moments, and while he was so absent the court asked a witness for appellant, who was on the witness stand, several questions, after which appellant's attorney returned and continued the examination of the witness. No objection was made or exception preserved to the questions put to the witness by the court, and appellant's attorney had ample opportunity to examine him on his return, and was not limited by the court in the examination. There is nothing objectionable in the questions asked the witness by the court. Under the circumstances, we can not perceive that appellant was in any way prejudiced by the court's partial examination of the witness. The bill of exceptions contains the following :

" And the court further certifies that during the progress of said trial, and while evidence was being introduced before the jury, said trial judge was asleep some four or five minutes, and during such time did not hear the testimony; but neither counsel made any objection to said judge being so asleep, as aforesaid, nor called his attention to the fact, nor disturbed nor interrupted him in any way or manner, but, on the contrary, permitted him to sleep, as aforesaid, until he awoke of his own accord."

The trial commenced November 17, 1899, and the verdict was returned November 27, 1899. The trial therefore occupied eight or nine days, and may have been conducted in such manner as to exhaust almost any one compelled to listen to it, as was the presiding judge. Conceding the irregularity of the presiding judge going to sleep while a trial is progressing, we can not hold the mere circumstance of his having slept four or five minutes reversible error. If the judge was asleep, as certified, counsel must have known it, and knowing it, they should either have suspended the examination of the witness then testifying until the judge awoke, or have awakened him by calling his attention, in a voice sufficiently loud to awake him, to the fact that the trial was progressing. Counsel did neither, but proceeded with the examination, and after the judge awoke failed to call his attention to the fact that testimony had been given while he was asleep, or to object in any way. It does not appear what testimony was taken while the judge was asleep, or that there is any objection to it, or that it was, in the least, prejudicial to either party.

Counsel also complain that the judge was absent at one time; but if there is any evidence of this, it is merely inferential, and occurs in the examination of the witness E. H.. Murray. The court may have been unavoidably temporarily off the bench, in which case counsel should have suspended the examination of the witness till his return. Counsel for appellant, during the alleged absence of the judge, asked the witness two questions, which counsel for appellee objected to, when appellant's counsel temporarily withdrew the questions, and shortly afterward this occurred:

Mr. Page: "There was a question or two counsel objected to, and because the court wasn't here I didn't ask it."

Court: "Very well."

Page: "That is with reference to how closely trains followed each other there that night."

Court: "He may answer;" and the witness answered the question.

Clearly, the absence of the judge was not prejudicial to appellant.

Numerous objections have been made by counsel for appellant to the conduct of the judge on the trial, in respect to which no exceptions were taken. We find no evidence in the record of partiality or prejudice on the part of the presiding judge. On the contrary, we think he superintended the trial fairly and impartially.

Very many objections were made in respect to evidence, which we have carefully considered, and find no reversible error in the admission or exclusion of evidence. The court limited argument to the jury to an hour and a quarter on each side, and this is urged as ground of complaint, but no exception was taken to the ruling.

We find no reversible error in respect to the remarks, in argument, of the attorney for appellee.

It appears from the bill of exceptions that the court refused to consider certain affidavits presented by appellant's counsel in support of a motion for a new trial, on the ground urged by counsel for appellee, that appellee had not been furnished with copies of the affidavits, in accordance with the rules of the court. Having inspected the rules, which are set out in the record, we are of opinion that the affidavits were properly excluded. But even though their exclusion were error, appellant could not avail of it, because the affidavits are not in the record, and, without knowledge of their contents, we could not decide whether or not their exclusion was prejudicial to appellant

Lastly, it is objected that the sum awarded as damages is excessive. The appellee, at the time of the accident, was about forty years of age, and there is abundant evidence that prior to that time he was a healthy, strong, active man, capable of hard manual labor. He had been employed for between thirteen and fourteen years by a single firm as a teamster, and earned $12 per week. The appellee testified that, after the accident, he at first had pains in his stomach, breast and back; that the pain in his stomach and back continued; that afterward he had pains

in his legs, so that he could use them very little; that he could not urinate nor evacuate without taking medicine; that he had been in bed nearly all the time since the accident, and not out of the house until brought to the court to attend the trial, and that he had lost forty pounds in weight; also that he was unable to work.    Dr. Reynolds, who had been appellee's family physician more than eighteen years, testified as follows:

" Prior to October, 1897, he had always enjoyed vigorous health.    He was well qualified to work as a teamster.    I was called to attend him on the night of October 1, 1897, at his home.    He was lying on the bed, partially undressed; he seemed a little delirious at times.    I made an examination.    I examined him carefully all over, and found no broken bones, but he appeared to be in a state of suffering from shock, as would be indicated by cold extremities, feeble pulse and nausea he was suffering from.    There was extreme tenderness over his back, stomach and bowels; that was an objective symptom; I discovered it by pressure.    He was slightly flighty for a couple of days.    When I first saw him his pulse was very weak; inclined to be irregular.    Pain was principally about the center of back and in stomach, or at lower end of breast bone and in abdomen.    He complained he couldn't retain his urine; it was dribbling away more or less.    It was about a couple of days before this mental condition passed over.    He developed a tingling, crawling sensation in his feet in three or four days.    He was treated by me at that time.    He was treated from then down to present.    Pain in breast bone increased after two or three days.    He complained more of pain about the third day than when first injured.    Pain in back and stomach has never left him.    Trembling in his legs, feet and knees developed a little later.    He has been able to walk a few steps with assistance; with a cane in each hand.    At the end of three or four months I tried to get him up, but was obliged to desist, as it made him worse.    He still complains of pains in the back, stomach, abdomen, hips, feet and legs.    Bowels did not move at all except by artificial aid.    He has difficulty frequently in passing water.    After accident he developed a general nervous condition; became extremely nervous and easily exhausted.    He has been subject to attacks of pain, apparently starting in back, passing around body and centering in stomach.    He used to be subject to spells every day and then they came on less frequently,

every two or three days, and still less frequently. He has been frequently examined for loss of sensation. From above the knees down to the feet, sensation is less in left leg apparently than in right, and it extends up a little more on outside of left leg than on right. General progress of the case has been very slow and unsatisfactory. In my opinion, he is suffering from general shock to the nervous system. In my opinion, lower part of spine and spinal column is injured. I think he has no chances of a permanent recovery; that there will be no improvement practically. Don't think he will ever be able to do manual labor. Have been present at several examinations of this man. Present at first examination, Drs. Walker, Leeming and myself. Drs. Walker, Patrick and myself made two examinations. We examined him for tuberculosis; didn't find any evidence of it, nor of syphilis, cancer, or anything of that kind. Have noticed knee jerks, they have been directly interfered with; right has been exaggerated and left diminished. Have attended him ever since accident."

The testimony of Dr. Reynolds was corroborated by that of other physicians. The record does not indicate any evidence of prejudice, passion or partiality on the part of the jury, and we can not usurp the province of the jury by holding that the amount of the damages assessed is excessive. The judgment will be affirmed.