# Commonwealth *v.* Croson, Appellant.

*Criminal law—Criminal procedure—Jurors—Challenge for cause —Misconduct of jurors—Continuance—Judicial discretion.*

1. At the empanelling of jurors for the trial of an indictment for murder, the trial judge did not improperly exercise his discretion in overruling defendant's challenge for cause of a juror who admitted that he held an opinion as to the guilt or innocence of the defendant, formed from reading an account of the case, where such juror stated that he would be able to render such a verdict as would be warranted by the evidence, unaffected by the opinion which he held.

2. In such case the court acted within its discretion in refusing to withdraw a juror and continue the case, although it was alleged that one of the jurors had slept during a part of the trial, where no proof in support of the allegation was produced and where the investigation of the matter by the trial judge satisfied him that the juror was not asleep during any portion of the trial.

*Evidence—Cross-examination—Proper questions.*

3. Where in such case a witness for the defendant had been questioned in his examination in chief as to occurrences preceding the killing and as to the whereabouts of himself and deceased, and in reply to a question "as he (deceased) went in the house (where the killing took place,) where did you go," the witness replied, "I stopped in the kitchen for about one second and then went in the front room," the trial judge made no error in permitting the Commonwealth to cross-examine the witness as to what he said

and heard and what was done in the kitchen and front room, although as to such matters the witness had not been interrogated in chief.

*Manslaughter—Charge to jury—Definition of manslaughter—Proper charge.*

4. In such case, after explaining to the jury the difference between murder and manslaughter, the court made no error in defining voluntary manslaughter as a "homicide or killing intentionally committed under the influence of passion.   The term passion as here used includes both anger and terror, provided they reach a degree of intensity sufficient to obscure temporarily the reason of the person affected......Passion which will reduce homicide to manslaughter consists either of anger or terror......"

*Murder—Murder of the first degree—Evidence—Proper conviction.*

5. Where on the trial of an indictment for murder, there was evidence that defendant had been entertaining a party of friends, among whom was deceased, at his house; that deceased and one of the guests became engaged in an altercation, that defendant with a shotgun in his hand walked into the room where deceased was standing at the corner of the fireplace, passed behind deceased to the other side of the fireplace and shot deceased who was standing with his hands in his pockets, the evidence contained the ingredients necessary to constitute murder of the first degree and a conviction thereof was affirmed.

Argued Sept. 28, 1914.   Appeal, No. 298, Jan. T., 1914, by defendant, from judgment of O. & T., Fayette Co., March T., 1913, No. 18, on verdict of guilty of murder of the first degree, in case of Commonwealth v. Isaiah Croson.   Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Indictment for murder.   Before UMBEL, P. J.

The facts appear in the opinion of the Supreme Court and in Commonwealth v. Croson, 243 Pa. 19, and in the following excerpt from the opinion of the court below refusing a new trial.   "......after examining the witness, Walter Mormon, at some length as to the occurrences of the evening and as to the actions, conduct and whereabouts of himself and the deceased (Brooks), at

the close of the examination in chief counsel for the defendant asked the witness, "As he (meaning Brooks) went in the house where did you go?" to which the witness replied "I went in the kitchen at the present time and went in the front room, I stopped in the kitchen for about one second and then went in the front room." Which answer was clearly responsive to the question, and the defendant having stopped the examination in chief at that point, we think, after the defendant placed the witness in the house, under the authority of Commonwealth v. Creson, 243 Pa. 19, the Commonwealth on cross-examination had the right to ask the witness what he saw and heard and what was done in the kitchen and the front room while he was there especially what was said to and done by the defendant which are the matters complained of.

Verdict of guilty of murder of the first degree, upon which sentence of death was passed. Defendant appealed.

*Errors assigned* were in permitting the cross-examination of defendant's witness Mormon, referred to in the excerpt from the opinion of the court below, and in the opinion of the Supreme Court, various assignments referred to in the opinion of the Supreme Court, and the fifth and sixth assignments which were as follows:

5. The court erred in charging the jury when defining voluntary manslaughter as follows:

"Manslaughter differs from murder by the absence of malice and is defined to be where a person upon sufficient provocation and in the heat of passion takes the life of another, and that usually occurs in fights and encounters between opposing forces, where sufficient provocation has been given and the passions have been aroused and there has not been sufficient time for the mind to cool and for reason to resume its sway, and life is taken. Voluntary manslaughter is a homicide or killing intentionally committed under the influence of pas-

sion. The term passion as here used includes both anger and terror, provided they reach a degree of intensity sufficient to obscure temporarily the reason of the person affected. Passion, as used in defining manslaughter, means any of the emotions of the mind known as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection. Although anger is the passion usually existing in cases of this class yet there are other passions, as sudden resentment or terror, rendering the mind incapable of cool reflection—reducing the grade of the crime. Passion which will reduce homicide to manslaughter consists either of anger or terror— terror from the belief on the part of the slaughterer that his life is in danger is sufficient, although his belief may be unfounded, as for instance, if you were sitting quietly in your home and some one were to come in and, even though joking, by means of his action and threats, that he did not mean to carry into execution, if he raised in your mind such a condition of sudden terror as that your passions were suddenly aroused and your reason, in a way, dethroned, and even though he did not mean to do you an injury you were instantly, under those circumstances, to take his life, the killing might be unlawful but it would not be malicious and would not be murder and would be manslaughter. In this case, if you find the killing was not justifiable and was unlawful but without malice and the shot was fired by the defendant under the influence of sudden anger or passion caused by an assault of the deceased or by the threatening manner he approached the defendant or under the influence of terror caused by threats made by the deceased, then the crime would not be murder but would be manslaughter.

Further on the matter of voluntary manslaughter, if there is a lack of sufficient provocation or if there is an absence of passion then it is not manslaughter but murder. Thus, if there be sufficient provocation in the first instance and passion such as we have described has

been aroused and yet after that there has been time for the passion to pass away and the mind to become cool and reason to resume its sway, then, although the provocation previously existed, the passion is not present and the offense, if life is taken, is not manslaughter but murder. And although the passions may have been aroused, if it were.on a trivial matter and the provocation were not sufficient to warrant such passion, then the killing would not be manslaughter but murder. To justify a conviction of manslaughter and not murder the death must have occurred in the heat of blood and on immediate provocation, there having been no previous malice."

6. The court erred in charging the jury as follows:

"As we have already indicated to you, if you should find that the defendant fired the shot in the heat of passion, although there may have been but a very short time to arouse his passion—and you will keep in mind the meaning of the word passion—and life was taken, then malice would be wanting and the crime would not be murder but manslaughter."

*A. E. Jones,* with him *F. C. Newcomer,* for appellant.

*S. J. Morrow,* Assistant District Attorney, with him *S. Ray Shelby,* District Attorney, for appellee.

OPINION BY MR. JUSTICE POTTER, October 26, 1914:

This appellant was here upon a former appeal, as reported in Com. v. Croson, 243 Pa. 19. In the first assignment of error presented in this appeal, it is alleged that the trial court erred in overruling defendant's challenge for cause, of one of the jurors, who admitted that he held an opinion as to the guilt or innocence of the defendant, formed from the previous reading of an account of the case. Upon examination, however, the juror stated that he would be able to render such a verdict as would be warranted by the evidence, unaffected by the

opinion which he held.   This brought him within the limits of the established test, and the exercise of the discretion of the lower court which had the juror before it, will not be disturbed.  Com. v. Minney, 216 Pa. 149; Com. v. Spahr, 211 Pa. 542.

In the second assignment of error, complaint is made by counsel, that the trial court erred in refusing a motion to withdraw a juror and continue the case, for the alleged reason that one of the jurors had slept during a portion of the time, at the trial.  Opportunity was given to counsel to take testimony in support of this allegation, but no proof was produced.   The investigation of the matter, by the trial judge satisfied him that there was no merit in the suggestion that the juror in question was asleep, during any portion of the trial, or that he failed to take in anything of importance. That the discretion of the trial court was properly exercised in this matter, we have no reason to doubt.

In the third assignment of error, counsel for appellant complain that in the cross-examination of the witness Mormon, the district attorney went beyond the scope of the direct-examination.  We do not see that it went farther than was required to bring out the whole truth with reference to the subject of the inquiry.  Nor does it appear that the trial judge in commenting upon this testimony made it any stronger than he was warranted in doing.  He cautioned the jury that they were to take their own recollection of the testimony, and not that of counsel, or of the court.   The criticism of the trial judge, for his definition of voluntary manslaughter, which appears in the fifth and sixth specifications of error, is without justification.  The definition which he gave was an ample one.  Nor does the suggestion in the seventh assignment, that the court unduly minimized the testimony as to the shots which were fired outside the house, before the shooting occurred inside, seem to us to merit any serious consideration.  Upon the former appeal, we expressed the opinion that the interests of

justice required fuller instructions to the jury upon the rights of a householder to defend himself against a violent intruder. Upon the last trial the court met this suggestion by dwelling fully upon this phase of the case, and the result is, that counsel for appellant now complain of the extent of the instruction, and of the detailed illustrations that were given. It would seem that in this particular it is difficult to satisfy the requirements of counsel. Their complaint is in this respect, somewhat captious, and is not well founded.

In the ninth assignment, an extract from the charge is presented which is alleged to have been erroneous. Wherein it was incorrect does not appear. It was merely a recital of the substance of the testimony of two of the witnesses. This evidence was properly a subject of argument for the jury, but it presents no question of law which properly calls for consideration upon our part.

Upon the case as a whole, we find that the evidence presented by the Commonwealth, contained the ingredients necessary to constitute murder of the first degree. Beyond this inquiry it is not our duty, or our province to go. We are not to review the facts in order to determine the question of guilt or innocence. That was for the jury. Appellant has had the benefit of a second trial, very carefully conducted, and has been afforded full opportunity to present the facts upon which he relied, as a defense. His counsel have been untiring in his behalf, and have exerted themselves with a zeal that has gone to the extreme limit, in invoking the aid of every possible legal position which they deemed might be of advantage to the defendant. The microscopic scrutiny of the record by counsel for appellant has not resulted in presenting to us anything which we feel can fairly be regarded as erroneous in the trial of the case.

It remains therefore but to say, that the judgment is affirmed, and to direct that the record be remitted to the court below, for the purpose of execution.