THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* GERARD J. BRINKMAN, Defendant.

County Court, Queens County, October 16, 1953.

*Henry W. Schober* for Gerard J. Brinkman, defendant.

*Henry Vollmer, Jr.*, and *Joseph Lonardo* for Robert Tufano and another, defendants.

*Sidney Rosenthal* for Victor Clemente and another, defendants.

*Malcolm Wilson* for Bernard F. Fox, defendant.

*Albert J. Sicree* for John A. Neary and another, defendants.

*Nathan A. Goldenthal* for Francis S. Amrhein, defendant.

*Roy P. Monahan* for William P. O'Mara, defendant.

*T. Vincent Quinn, District Attorney (J. Wolfe Chassen, George J. Regan* and *A. Edward Markowitz* of counsel), for plaintiff.

HOFFMANN, J. Defendant Brinkman, having heretofore been granted an inspection of the record of attendance of a grand jury which has indicted him for conspiracy, for various violations of several of the provisions of article 170 of the Penal Law and for certain violations of the provisions of sections 886 and 901 of the New York City Charter, now further moves for an order permitting him to examine the grand jury minutes. Both such motions have been made to enable him to bring to the attention of the court facts which, by his view, will ultimately entitle him to an order setting aside the indictment upon the ground that, out of the number of the grand jurors concurring in the vote to indict him, there were not at least twelve who had heard substantially all of the evidence adduced in connection with the crimes charged in the indictment. All of the other defendants named in the indictment have since joined in the motion. Basically, the purpose of the motion is to enable the defendants to demonstrate that, by reason of the absences of certain grand jurors from the various sessions at which the crimes now charged were inquired into, those grand jurors did not hear substantial portions of material evidence and so failed in their obligation to hear all (or at least substantially all) of the evidence bearing upon the crimes for which they eventually indicted the defendants. The motion is distinguishable from other motions to inspect the grand jury minutes and set aside the indictment, in that these latter motions were made and disposed of (after an examination of the minutes by the court) from the viewpoint of sufficiency of legal evidence to support the various counts of the indictment, upon the assumption that a requisite number of the grand jurors had heard at least substantially all of that evidence.

Consistently with the policy prevailing in this court, defendant's application for an inspection of the said minutes is denied, without prejudice to the defendant's right to apply for such alternative and further relief as may be deemed appropriate in the circumstances.

The defendant's motion has, however, impelled the court to examine both the minutes and the record of attendance. As a result, it is of the opinion that, by reason of the absences of the several grand jurors, twelve of the number who presumably concurred to indict could not possibly have honored a statutory obligation to hear substantially all of the evidence bearing upon the accusations made by the indictment.

This indictment is a partial result of a continuing investigation by the grand jury into criminal aspects of the construction of the so-called "Laurelton Sewer" and other public improvements in Queens County. Between September 10, 1952, and March 19, 1953 (both dates inclusive), the grand jury conducted some thirty-three sessions, at all but one of which (i.e., that held February 4, 1953) evidence material and pertinent to the matters embraced by the present indictment was laid before them. From an indorsement thereon, the indictment appears to have been voted on March 24, 1953, and from the record of attendance it also appears that seventeen grand jurors were present on that occasion. The grand jury minutes reveal, however, that no further evidence had been received on the day when the indictment was voted. In view of the conclusions here reached, it is considered unnecessary to yield to the urging of the defendant that a hearing be conducted to determine how many of the grand jurors actually concurred in that vote, for the result must be adverse to the prosecution even though the seventeen then present were unanimous in their decision to indict.

Reference to the attendance record discloses that out of the seventeen grand jurors in question, only five had been present at all thirty-two sessions. Of the remaining twelve, juror number 822 had been absent sixteen times due, apparently, to illness. Jurors numbered 819, 828 and 832 had each been absent eight times, while jurors numbered 829, 833 and 836 had each been absent four times. Juror number 815 had been absent three times, jurors numbered 813 and 820 had each been absent twice and jurors numbered 817 and 825 had each been absent once. All seventeen had been present at but six of the thirty-two sessions. The question is whether, in this state of affairs, the underlying essential requisites of a valid indictment have been supplied.

Our system of prosecution by indictment plainly requires first, that at least sixteen grand jurors be present before the body may transact any business at all (Code Crim. Pro., § 224) and second, that of those present, twelve must concur — that is,

they must unite in a conviction as to the justice of an indictment before they may lawfully find it (Code Crim. Pro., § 268). The basis upon which that conviction must be formed is just as plainly defined.

First of all, they may act only upon legal evidence. In adopting that requirement we have departed from an ancient principle that grand jurors might act upon their individual and personal knowledge obtained from any source (*Commonwealth* v. *McNary,* 246 Mass. 46, 54; *Commonwealth* v. *Woodward,* 157 Mass. 516, 518; *Coblentz* v. *State,* 164 Md. 558, 570; *United States* v. *Central Supply Assn.,* 34 F. Supp. 241, 243), including information conveyed by one of their number under no other sanction than the grand jurors oath (*Commonwealth* v. *Hayden,* 163 Mass. 453, 455). While our constitutional framers adopted the grand jury system as an existing institution whose essential character must be found by reference to the common law (*People* v. *Petrea,* 92 N. Y. 128, 143; cf. N. Y. Const. of 1777, art. XXXV; L. 1787, ch. 1, and N. Y. Const. of 1821, art. VII, § 7), the '' ancient principle '' is not operative in this State for, though it is a grand juror's duty to declare his knowledge or reason for belief that a crime has been committed (Code Crim. Pro., § 259) and while the body may *investigate* upon their own knowledge, or on information derived from any source deemed reliable (*People ex rel. Livingston* v. *Wyatt,* 186 N. Y. 383, 391–392) still, it may receive only legal evidence (Code Crim. Pro., § 256) in the form of sworn testimony and legal documents (Code Crim. Pro., § 255) so that the individual grand juror's knowledge may only be acted upon by the body when offered to it through his sworn testimony (*Matter of Gardiner,* 31 Misc. 364, 372). It follows that there can be no lawful substitute for the actual hearing by each and every grand juror of the evidence adduced under the sanction of an oath or its equivalent.

Second, it is not only their duty '' *to weigh all the evidence submitted* to them,'' but further, '' when they have reason to believe that other evidence, within their reach, will explain away the charge, they should order such evidence to be produced ''. (Code Crim. Pro., § 257, emphasis supplied.)

Finally, insofar as the persuasive quality of the evidence is concerned, they ought to indict only '' when *all the evidence before them, taken together,* is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by a trial jury.'' (Code Crim. Pro., § 258, emphasis supplied here also.) By this standard, the evidence must prove the charge beyond a reasonable doubt. (*People* v. *Brickner,* 8 N. Y. Crim. Rep. 217, 221; cf. also, **People** v. *Acritelli,* 57 Misc. 574, 584;

*People* v. *Ansteth,* 84 Misc. 356, 357; *People* v. *Gresser,* 124 N. Y. S. 581, 583–584, and *People* v. *Nicosia,* 164 Misc. 152, 157; cf. also, *State* v. *Lawler,* 221 Wis. 423, 432–433.) It has been said that the requirement is one of constitutional right. (*People* v. *Sexton,* 187 N. Y. 495, 511.) The statutory language seems unequivocal in requiring that a grand juror's action in voting to indict must be based upon his personal hearing and evaluation of all of the evidence. Any effort to interpret that language as meaning something less than what is so plainly prescribed is discouraged by a review of the evolution of the present system.

It was anciently considered only that a grand jury "ought to be thoroughly persuaded of the truth of an indictment so far as their evidence goes" (4 Blackstone's Commentaries, 303). Turning away from the "probable cause" theory (*Beavers* v. *Henkel,* 194 U. S. 73, 84) from which stems the rule that "Credible evidence which excites in the mind of the grand jury an honest and reasonable belief that the accused is guilty of the offense charged is a sufficient basis to warrant the jury in returning an indictment" (*State* v. *Lawler, supra,* p. 434), we, prior to the adoption of our Code of Criminal Procedure, settled the propositions that a grand jury ought not to find an indictment unless the testimony against the accused "ex parte and unexplained, is sufficient to convict" (*People* v. *Price,* 6 N. Y. Crim. Rep. 141, 143–144, affd. on opinion below, in 119 N. Y. 650) and "that a grand jury ought to have the same persuasion of the truth as a petit jury or a coroner's inquest", denying at the same time, that grand juries should be permitted "to speculate upon the chances of the guilt or innocence of the citizen." (*People* v. *Hyler,* 2 Parker Cr. Rep. 570, 575–576 and authorities cited; *People* v. *Baker,* 10 How. Prac., 567, 572–574.) In passing from what was considered the necessary degree of the grand jury's conviction of the individual's guilt, to the means of its persuasion, we find one of the elementary writers (whose views were subscribed to in the *Price* case, *supra,* p. 144) in his enunciation of the "more just and merciful rule" (1 Bishop's Crim. Pro. [2d ed.], § 867) accepting in turn, the concept of Mr. Justice FIELD, that the grand jury should not only receive (and perforce consider) "*all the evidence presented which may throw light upon the matter* * * * whether it tend to establish * * * innocence or * * * guilt * * * if * * * you (the grand jury) have reason to believe that there is other evidence * * * within your reach, which would qualify or explain away the charge * * * it will be your duty to order such evidence

to be produced　*　*　*　you ought not to find an indictment unless, in your judgment, the evidence before you, unexplained and uncontradicted, would warrant a conviction by a petit jury.'' (Charge to the Grand Jury, 2 Sawy. [U. S.], 667, 670, emphasis supplied.)

In the light of this background, our present statutes seem pointedly designed to safeguard a defendant's interests and while in its essence, the traditional grand juror's oath remains (Code Crim. Pro., §§ 245, 246) the duty to '' diligently inquire and true presentment make '' takes on a new meaning so as first, to restrain him from indicting on other than legal evidence, second, to require him to hear and weigh all of the evidence, and third, to restrain him from voting to indict unless and until satisfied that upon all of the evidence the charge has been proved beyond a reasonable doubt.　Whatever may be said of the entire sixteen grand jurors whose presence is requisite before the body may lawfully act at all, it seems essential that at least each of the twelve who concurred to indict must have heard substantially all of the evidence in the case before they may lawfully act along that line.

In the allusions made to '' substantially all of the evidence '' it is intended merely to lay out of the case only such minor and brief inattention as sometimes results in a juror's missing something of minor importance, within the doctrine of the '' sleeping juror '' cases.　Of course, even under that line of cases no sanction can be found for a verdict tainted by such a degree of inattention as to have left the juror in ignorance of a substantial part of the evidence (*State* v. *Mellor*, 73 Utah 104, 116) or of something of substantial importance.　(*Dolan* v. *State*, 40 Ark. 454; *Baxter* v. *People*, 8 Ill. 368, 379; *McClary* v. *State*, 75 Ind. 260; *Braunie* v. *State*, 105 Neb. 355; *Commonwealth* v. *Jongrass*, 181 Pa. 172; *Commonwealth* v. *Croson*, 246 Pa. 536).　The fact being unknown to the accused at the time of its occurrence, he has been held entitled to have the verdict set aside (*Stone* v. *State*, 23 Tenn. 27, 38; *Hogshead* v. *State*, 25 Tenn. 59, 60), but when noticed by him, it is his obligation to call the court's attention to the matter forthwith (*United States* v. *Boyden*, 24 Fed. Cas. 1213, 1215; *Cogswell* v. *State of Georgia*, 49 Ga. 103; *People* v. *Nachowicz*, 340 Ill. 480, 497; *Slaughter* v. *Coke Co.*, 34 Tex. Civ. App. 598) *so that the testimony may be repeated* (*People* v. *Morrissey*, 1 Sheld. 295, 297), *or the proceedings may be suspended* until the sleeper has been awakened.　(*Chicago City Ry. Co.* v. *Anderson*, 93 Ill. App. 419.)　An evaluation of the evidence adduced at the times of

the absences here found to have occurred, serves to convince that what the several absentees missed was of substantial importance indeed.

Whatever may be the practice elsewhere, our Legislature has silenced argument *inconvenienti* (cf. *Jones* v. *United States,* 162 F. 417). Nor is the concern of our law for the integrity of the panel new.

In former times, when it was the practice for our grand juries to attend court in presenting their indictments it was also the practice for the clerk to call the roll to determine whether a quorum was present, and the presence of less than a quorum was fatal to the indictment. (*People* v. *Herrmans,* 69 Misc. 303, 308–309.) The view was, that " It is the duty of each individual grand juror to see for himself that the work of the grand jury is completely and legally accomplished." When the hand up had been made, the jury either retired to resume its duties, or was discharged. (1 Chitty on Criminal Law, p. 324; 1 Colby Crim. Law, ch. XII, § I, subd. 7, p. 255.) Our practice has changed so that now, the indictment need no longer be presented in the presence of the body of the grand jurors, but the concern for faithful attendance is even more evident. Within the city of New York, relief from service may be had only by leave of the court as in the case of trial jurors (Rules of Jury System, City of N. Y., rule 26; Bender's Court Rules [1st ed.], p. 232; Judiciary Law, §§ 604, 605) and violations entail penalties. (Judiciary Law, § 606.) Presumably, even court excused absences may deprive the juror of sufficient credit for " prior service " (rule 27) and thus deny him a buffer against any necessity for rendering further jury service within a year. (Judiciary Law, § 601.) Attendance at each session of the grand jury is now taken by an attaché of the court, not only making certain of the presence of the necessary quorum, but also enabling the clerk of the court to certify the attendance of its members in connection with the payment to them of their jurors' fees. All of these considerations — our policy as to the means and the measure of a grand jury's persuasion, and the very evident concern for maintenance of its numerical integrity — bespeak our law's plain purpose to require that an irreducible minimum of the number of grand jurors shall have legally dependable and complete knowledge, and thus conduce toward a well-considered and intelligent conclusion as to whether an indictment is justified in any case.

Just as clearly, any practices amounting to a substantial variance from the standards established by the statutes are

at war with that evident purpose. Moreover, once a material departure is sanctioned the inevitable question is the extent of its seriousness and, as has been said of the rule excluding an unauthorized presence in the grand jury room, "Discriminations between degrees of departure * * * are difficult to manage, and, unless the bar is maintained in all cases, it can hardly have any effective existence." (*Coblentz* v. *State,* 164 Md. 567, *supra.*) Obviously, "all the evidence" cannot be weighed by absentees who have missed a substantial part of it, and who might, otherwise, have discovered cause to order the production of other evidence which might explain away the charge. Jurors are hardly in a position to form a sound judgment as to whether "all the evidence * * * taken together" unexplained and uncontradicted would warrant a conviction by a trial jury (particularly if they have not heard a substantial part of a defendant's explanation) any more than a petit jury could properly resolve factual issues without having heard substantially all of the evidence. If our statutes do not present a firm mandate, we must speculate as to whether there is any irreducible minimum at all and if so, when it is reached for, "statutory provisions must be interpreted in the light of all that may be done under them." (*Beavers* v. *Henkel,* 194 U. S. 83, *supra.*) Thus, in an extreme case, seven grand jurors (after having been sworn) might absent themselves from all but the last one of numerous sessions in a long and drawn out hearing but, by appearing and voting in combination with five others at that last session, could supply the concurrence necessary to indict. Even under a more liberal policy than that defined by our statutes, there would be some difficulty in accepting such a result as satisfying such basic and historic requirements as "thorough persuasion of the truth" and a declaration "upon careful deliberation" that there was good reason for the accusation against the defendant and for his trial. (*Renigar* v. *United States,* 172 F. 646, 649–650, 654; *Ex Parte Bain,* 121 U. S. 1, 10.) In a less extreme (but more probable) case, the panel of twenty-three might devise a "platoon system" to provide a necessary quorum of sixteen with regular and periodic "rest" intervals for a different "off duty" platoon of seven grand jurors at each session. The resulting deficiency in the absentees' legitimate knowledge of the evidence would be quite apparent — and the defiance of the statutory purpose would be no less sharp because entirely unwitting. True, extremes have been resorted to in considering the possible results of whittling away the statutory safeguards. But the danger of extremes is

avoided only by denying the principle which makes them possible, for " Illegitimate and unconstitutional practices get their first footing * * * by silent approaches and slight deviations from legal modes of procedure." (*Renigar* v. *United States, supra,* p. 655; *People* v. *Singer,* 5 N. Y. Crim. Rep. 1, 3–4.) And since we are dealing with principles and not with personalities, it is appropriate to explore such possibilities. Overlooking the disquieting suggestion inherent in an invitation issued by one of the grand jurors to a witness in this case, that the latter state what gossip he had heard of and concerning an individual obviously suspected of engaging in criminal activity, it may be and is assumed that the attitude thus taken was not shared by the rest of the panel. The present District Attorney's reputation for scrupulous fairness is deserved and well known. It is certain that he would never knowingly engage in nor condone practices detrimental to a prospective defendant's substantial rights. Nevertheless, it is a matter of record that the acts of grand juries have occasioned judicial concern in the past (*People* v. *Brickner,* 8 N. Y. Crim. Rep. 217, 219–220; *People* v. *Naughton,* 38 How. Prac. 430, 436–437; cf. also, *People* v. *Restenblatt,* 1 Abb. Prac. 268, 269), and if we are to be as confident of the future as we are of the present, the safeguards should be kept intact. " Neither sound reason nor public policy justify any departure from settled principles applicable in criminal proceedings for infamous crimes. Even if there were a wide divergence among the authorities upon this subject, safety lies in adhering to established modes of procedure devised for the security of life and liberty." (*Crain* v. *United States,* 162 U. S. 625, 644–645.) If a correct view has been taken of the principles established and settled by our Legislature for the regulation of grand jury procedure, it would appear to be an unjustifiable departure from those principles to sanction as valid, the indictment in this case.

The combined research of counsel and the court has not brought to light any controlling or persuasive authority on the question. In *United States ex rel. McCann* v. *Thompson* (144 F. 2d, 604, 607, 608) the issue was considered but not decided of necessity, since it was assumed that a sufficient number of qualified jurors who had heard all of the evidence, had concurred in finding the indictment. *Morris* v. *State* (142 Ark. 297, 300) decided only that an indictment might not be impeached by the declaration of a grand juror, and reiterated a prior disapproval of such a procedure. (Cf. *Worthem* v. *State,* 82 Ark. 321, 324.) *Nash* v. *State* (79 Ark. 120, 122) involved a claim that

less than the necessary twelve grand jurors had concurred to indict, but adhered to a previously taken position that the fact could not be determined by inquiry of the grand jurors themselves. (*Nash* v. *State,* 73 Ark. 399, 406.) The Arkansas cases then do not address the merits of the question at all. They decide only that the presumption of verity of an indictment cannot be overcome, " if at all ", by evidence from the members of the grand jury and in that respect are at variance with a New York view that the fact of concurrence is not a " state secret " which the jurors are forbidden to disclose. (*People* v. *Shattuck,* 6 Abb. N. C. 33, 34–36; *People* v. *Naughton, supra,* p. 436; cf. also, 8 Wigmore on Evidence [3d ed.], § 2364.)

Beyond question, the discovery of a fatal flaw in the proceedings on which the present indictment is based will result in considerable inconvenience and delay in prosecution. But, " The safeguards against unfounded accusation and unjust conviction provided for an accused by the Constitution and statutes may not be weakened by judicial decision to meet the supposed exigencies of a particular case." (*People* v. *Nitzberg,* 289 N. Y. 523, 531.) So, too, it may be inconvenient and may even entail financial loss for grand jurors to continue in faithful attendance at numerous sessions of their body and a respected authority suggests that such fidelity should not be exacted of them. (*United States ex rel. Thompson* v. *McCann, supra,* p. 607.) However, as already pointed out, in our jurisdiction their obligations are specific and inescapable. Unless excused by the court, they must attend. They cannot assume (as they did here) to " excuse " one of their number from service. But even more importantly, elements of convenience and even prejudice cannot be pitted successfully against a defendant's substantial rights (cf. *People* v. *Nitzberg,* 289 N. Y. 523, 531), for it remains as true now as when written by Blackstone, that " delays and little inconveniences in the forms of justice are the price that all free nations must pay for their liberty in more substantial matters; that these inroads upon the sacred bulwark of the nation are fundamentally opposite to the spirit of our constitution; and that, though begun in trifles, the precedent may gradually increase and spread, to the utter disuse of juries in questions of the most momentous concern." (4 Commentaries, 349–350.) Otherwise expressed, " The inconvenience of resubmitting the matter to the grand jury is temporary; the injustice of denying the defendants investigation pursuant to the law of the land would be perpetual." (*Coblentz* v. *State,* 164 Md. 569, *supra.*)

As for the philosophy that an indictment is " only an accusation ", it is one more readily embraced in the comfortable security of the ivory tower than in the defendant's place before the bar. By a more realistic view " It is an accusation based upon legal testimony　*　*　*　and is the concurring judgment of at least twelve of the grand jurors　*　*　*　that upon the evidence presented to them the defendant is guilty." For the purposes of bail at least, it entitles a judge to presume that the accused is guilty (*People* v. *Tinder,* 19 Cal. 539, 542–543; cf. also, *People* v. *Baker, supra,* pp. 568–570, and *People* v. *Van Horne,* 8 Barb. 158, 166), and it is " frequently regarded by the community at large as tantamount to a conviction. It is a grave matter　*　*　*　its consequences may encompass a lifetime and be transmitted from generation unto generation ". (*Matter of Gardiner,* 31 Misc. 364, 368–369, 375.)

While crime is evil so is the possibility of exposing the citizen to the disgrace of arrest and accusation and the anxiety and expense of trial under an indictment illegally found (*People* v. *Brickner,* 8 N. Y. Crim. Rep. 217, 219), for in such a case he should not even be called upon to answer it. Certainly, when arrayed against such substantial considerations as these, inconvenience and prejudice must yield.

Upon the other hand, the State has a profound interest in the soundness of the foundation upon which its prosecution rests. A fatal weakness, if not corrected in the early stages of prosecution, may result in a reversal of any eventual conviction, with a consequent waste of all effort and funds expended in bringing it about. The question involved is serious — whether, of the grand jurors who concurred in finding this indictment, there were twelve who had heard all of the evidence, and if not, whether the indictment should be set aside for that reason. The court finds from the attendance record and the grand jury minutes that there were not twelve who had heard all of the evidence, and concludes that the indictment should be set aside for that reason. The People will have a right to the review of any order accordingly, by way of appeal (Code Crim. Pro., § 518, subd. 3), or at their election, may resubmit the matter to a grand jury with appropriate precaution against any recurrence of such absences as have led up to the present situation. But by the one means or the other, the question should be eliminated from the case prior to trial.

As already indicated, the motion is denied but without prejudice to the defendant's right to apply for such alternative and further relief as may be deemed appropriate in the premises,