## COURT OF GENERAL SESSIONS — COUNTY OF NEW YORK.

### February, 1920.

## THE PEOPLE v. GHEDALE GOLDENBERG ET AL..

#### (110 Misc. 556.)

INDICTMENTS—WHEN MOTION TO DISMISS GRANTED—GRAND JURY—EVI-
DENCE—PENAL LAW, § 952.

Defendant G. was indicted for a violation of section 952 of the Penal Law; he and S. were indicted for grand larceny in the second degree in obtaining by false pretenses $200 from F.; and G. and three others were indicted for conspiracy to cheat and defraud one H. and others of money by false representation as to the value of a certain stock. The minutes of the grand jury disclosed that all of the charges grew out of the promotion and sale by the various defendants of the stock of the

Tex-York Producing Company. The defendant G., who at his own request appeared before the grand jury, was overwhelmed with immaterial, incompetent and vicious questions, and was given no opportunity to say a single word in explanation of the charges against him, and no further testimony was taken. *Held*, that a motion to dismiss the indictments will be granted, with permission to resubmit the cases to the same or to another grand jury.

MOTION to dismiss indictments.

*John T. Dooling, Assistant District Attorney,* for People.

*Kopp & Perlman,* for defendants.

MULQUEEN, J.:

On August 20, 1919, the grand jury of this county handed down indictments in the above-entitled cases. There was a fourth indictment against Galvin and Irwin Bloom, but as that has been dismissed on other grounds it will not be considered in this opinion.

One of the indictments under consideration charged the defendant Galvin with a violation of section 952 of the Penal Law; another charged the defendant Galvin and Samuel J. Smith with the crime of grand larceny in the second degree on an allegation that they had obtained the sum of $200 from one John Fagan by false representation.

The last indictment charged the defendants Galvin, Shear, Kerchwal and Robert E. Bloom with the crime of conspiracy on the ground that they had plotted to cheat and defraud one Edwin F. Huling and divers other persons of money by false representations concerning the value of a certain stock.

The minutes of the grand jury were given to the defendants, who have moved to dismiss the indictments on various grounds, and these motions are now to be considered.

It appears from the minutes that the charges grow out of the promotion and sale by the various defendants of the stock of a corporation known as the Tex-York Producing Company.

The good faith of the defendants was challenged in each of the indictments. That is to say, in order to sustain the charges it would be necessary for the People to prove that the defendants made the alleged false statements with guilty knowledge and intent; that the defendants knew when they made them that the statements were false, and that they were made with that knowledge, with the intent of deceiving and defrauding the various complainants mentioned in the indictments and all other persons.

In other words, even if the statements were false, if the defendants made them in the belief that they were true, they could not be convicted of any of the crimes charged in the indictments.

The grand jury heard several witnesses to sustain the contention of the People that the defendants made statements that were in fact false to prove guilty knowledge and intent and that the defendants did not act in good faith. An opportunity, however, was afforded Galvin to come before them, to explain, if possible, his connection with the various transactions; to prove, if possible, that he had acted in good faith and that he was guilty of no crime.

It is necessary to quote in full the minutes containing the examination of the defendant Galvin in order to clearly set forth the grounds for the disposition of these motions.

" Charles W. Galvin, one of the defendants, having requested to be heard by the grand jury in his own behalf, and the grand jury having granted such request, appears in person. By the Foreman: Q. Do you want to make a statement? A. Yes, sir. Q. The grand jury are willing to hear what you have to say in regard to the charge against you. Understand clearly that you come before us of your own free will; you are not forced to appear nor forced to testify. Anything you say is said freely and at your own instance. But if you choose to testify, everything you say is recorded here, and may be used as evidence against you, in case we decide to hold you on the charge.

After this explanation, do you wish to testify? A. Yes, sir. I want to make a statement and for Mr. Dooling to ask me questions. I have been here five days waiting for an opportunity of being permitted to appear before you gentlemen and prove that I am perfectly innocent of any wrongdoing or of any crime or anything in connection with the Tex-York Producing Company or any charges made against me before you gentlemen. Any statement that I make I can prove by documentary evidence. [The witness was thereupon duly sworn by the foreman.] By Mr. Dooling: Q. You know you are now under oath? A. Yes, sir. Q. You say your name is Charles W. Galvin? A. I do, sir. Q. I show you a paper and ask you if you recognize that paper? A. I positively do. Q. Did you write that (indicating name Ghedale Goldenberg)? A. Yes, sir. Q. When did you write that? A. I wrote it about six weeks ago in your office. Mr. Dooling: I offer it in evidence. [Received and duly marked in evidence.] The witness: My mother remarried when I was a mere boy, and my father's name was Galvin, and I have assumed that name since my mother remarried, and that is the name I have been known by in the community for the past fifteen years. Mr. Dooling: Is your mother alive? A. Yes, sir. Q. Where does she live? A. Roumania. Q. Does Mr. Galvin live in Roumania? A. No, sir. Q. When and where was your mother married to Mr. Galvin? A. Married right here in America. Q. Where? A. California. Q. Can you give us the place? A. Los Angeles. Q. Can you give the date? A. I can get it for you. As near as I can remember it was in 1900 or 1901; about that time. Q. In Los Angeles? A. Yes, sir. Q. Do you remember the first name of Mr. Galvin, your stepfather? A. Yes, Frank. Q. Didn't you tell me, in my office, that you were the son of John Galvin? A. No, sir. Q. You did not tell me that? A. No, sir. Q. And that your mother's name was Mary? A. Yes, sir. Q. And that you were born the son of John Galvin and Mary Galvin? A. I said I was the son of David Goldenberg.

Q. And not John Galvin and Mary Galvin? A. No, sir. Q. Is that a photograph of yours [handing witness photograph offered in evidence] ? A. Yes, sir. Q. And are you the same man that is referred to on the back of this photograph as Ghedale Goldenberg? A. Yes, sir. Q. You returned to this country from Europe in the year 1915, did you not? A. 1915, yes. Q. How many times have you been arrested since then? A. I was arrested in Philadelphia. Q. What for? A. I was arrested there on suspicion. Q. Were you arrested on November 19, 1915, in Philadelphia, for false pretenses in obtaining the sum of $488 on jewelry representing the same to be diamonds, when they were phoney stones? A. I was. Q. Were you arrested in Benton, Iowa, on July 25, 1916? A. No, sir. Q. Were you arrested in Chicago in 1908? A. No, sir. Q. Weren't you arrested in Chicago in 1908? A. I was, sir. Q. And you were arrested in Chicago in 1910, charged with rape? A. Yes. Q. Were you arrested again in Chicago on February 10, 1915, for attempting to sell a machine for making counterfeit money? A. Yes, sir. Q. And you were arrested in the city of Pittsburgh? A. Not arrested. Q. Were you indicted? A. Yes, sir. Q. And you are out on bail now? A. Yes, sir. Q. You were also arrested in Baltimore? A. Yes, sir. Q. And how many other places? A. No other. You have them all. Q. Mr. Ghedale, how much stock of Tex-York Producing Company have you sold? A. Pardon me. Am I permitted to explain each and every one of these matters I was arrested on?"

These questions constituted a violation of the defendant's rights. (People v. Glen, 173 N. Y. 395, 17 N. Y. Crim. 225; People v. Walsh, 92 Misc. Rep. 579; People v. Levis, 96 id. 513.)

These cases merely reaffirm the well-known legal proposition that only legal evidence can be presented to the grand jury as prescribed by section 256 of the Code of Criminal Procedure.

They also declare that no evidence should be received by

the grand jury which would not be admissible on a trial, and that the rules which govern a trial also govern the proceedings before the grand jury.

In the case of People v. Cascone (185 N. Y. 317, 20 N. Y. Crim. 175), the court held that the defendant in an action, either civil or criminal, cannot be asked on cross-examination whether he has been indicted, for an indictment is merely an accusation, and no evidence of guilt. Citing People v. Crapo, (76 N. Y. 288); Van Bokkelen v. Berdell (130 id. 141).

In the case of People v. Morrison (194 N. Y. 178, 23 N. Y. Crim. 173), the court said: "We have recently held and the law was well settled before, that 'The defendant in an action, either civil or criminal, cannot be asked on cross-examination whether he has been indicted, for an indictment is merely an accusation and no evidence of guilt.'"

In that case the court held that it was reversible error to ask such questions, and reversed a judgment of the Court of Sessions in Kings county convicting the defendant of the crime of petit larceny. The question as to the indictment was asked by one of the judges, and the court said: "The questions were asked by the court itself and we cannot say what effect the answers had upon the minds of the justices who, but for this evidence, might all have believed, as one of them apparently did believe, the testimony of the defendant Morrison." (People v. Morrison, supra, 179.)

It happened that the court in its decision inadvertently referred to the witness as the "defendant Morrison," whereas, in fact, the witness was not the defendant Morrison, but a brother of the defendant. Accordingly, the district attorney of Kings county, the Honorable John F. Clarke, moved for a reargument of the appeal on the ground that it appeared that the court was in error in referring to Morrison as the defendant, whereas in fact he was merely a witness called to testify in behalf of the defendant. The court denied the motion for a reargument, and reiterated its decision that an indictment is

a mere accusation and raises no presumption of guilt.    It held that the fact of a witness having been indicted is inadmissible to impeach or discredit him, and the rule applies to criminal actions as well as to civil, and to all witnesses whether parties or not.    (People v. Morrison, 195 N. Y. 116.)

It is thus well settled that it is reversible error to ask such questions of any witness.

It is contended by the district attorney that this testimony did not affect the merits of the accusation against the various defendants and that it may be disregarded.

It seems to me that this contention is unsound.    The good faith of the defendants was the principal question at issue.    It was the most important question to be decided.    The grand jury had the right, under the statute, to hear the defendants. (Code Crim. Pro., § 257.)    They did desire to hear the defendant Galvin, and he accordingly appeared before them at his own request.    It is immaterial whether they gave him a hearing of their own motion or at the request of the defendant himself.    Of course a defendant has no strict legal right to be heard by the grand jury, but the Code prescribes that in the interest of justice the grand jury may hear a defendant if they deem it advisable to do so.    But this defendant Galvin was not asked a single question concerning the transactions under investigation.    He was merely overwhelmed with these immaterial, incompetent and vicious questions and never had an opportunity to say a single word in explanation of the charges against him.    The inquiry appears to have ended abruptly.    No further testimony was taken.    Galvin asserts that he went up to the courthouse day after day, but was never permitted to go before the grand jury.    These questions created such a prejudice against him that it is not surprising that the grand jury found the indictments referred to.

That this is not a mere technical error, and that this testimony was regarded as evidence of guilt, is clearly established by the fact that the learned assistant district attorney himself

entertained the view that those questions and answers afforded competent legal proof. In the only memorandum submitted by the district attorney in opposition to the granting of these motions the point is made that " the defendant Charles W. Galvin was permitted, at his own request, by the grand jury, to appear after he had signed a waiver of immunity; by his own statement it will appear that he has had an unenviable record in the criminal courts, and has been using the name of Galvin, although his father's name is Goldenberg."

Now, from this statement it clearly appears that the district attorney regarded this as competent proof.

As a matter of fact it was wholly incompetent, and it was introduced in violation of well-known and well-established principles of law. It proved nothing, because, as the court said, it merely showed that charges had been made against him. It was hearsay, and afforded no proof that he had ever committed any crime.

If the learned district attorney believed that this evidence should be considered by them, it requires no stretch of the imagination to see what effect it produced on the minds of the jurors, who were laymen and not versed in the principles of law. It was so prejudicial that it renders it necessary for the court to set aside the findings of the grand jury.

We are aware that members of the grand jury at times of their own motion ask incompetent questions. It is the duty of the district attorney, under such circumstances, to explain to the jury that the law expressly prohibits the introduction of illegal evidence and to warn them that indictments found on such evidence will be dismissed. In the case at bar the injustice was done by the district attorney and not by any grand juror.

These indictments will therefore be dismissed, and permission will be given to resubmit the cases with the suggestion that the district attorney should be mindful of the words of Mr. Justice Marcus in People v. Walsh (92 Misc. Rep..579): " It

will be assumed that no evidence will be received by them which would not be admissible on a trial."

Ordered accordingly.