In the Matter of MALCOLM L. COLE, as Foreman of the Third Grand Jury of the May, 1955, Term of the Court of General Sessions of the County of New York, on Behalf of Said Grand Jury, Petitioner. IRVING REISS et al., Witnesses.

Court of General Sessions of the County of New York, August 24, 1955.

*Frank S. Hogan, District Attorney* (*Alfred Scotti* of counsel), for petitioner.

*William Kleinman* for witnesses.

CAPOZZOLI, J.  During the month of May, 1955, the Third Grand Jury for the May, 1955, Term initiated an investigation to determine whether certain public officers, employed by the New York State Liquor Authority, had entered into a conspiracy to receive, or had actually received, bribes for the improper performance of the duties imposed upon them by law as such public officers.

On May 10th and May 12th six employees of the State Liquor Authority, who are the subject of the proceedings now before this court, executed waivers of immunity and each appeared before said Grand Jury and was sworn as a witness.  However, after some perfunctory questions asked of each witness, the Grand Jury, instead of continuing with the questioning, delivered to the witness a questionnaire, an exact copy of which has been submitted to this court and has been marked court exhibit " A ".  Simultaneously with the delivery of the said questionnaire, the witness was directed by the Grand Jury to fill in answers to each and every question appearing in the questionnaire and to return same at a later date.

On the 31st day of May, 1955, as directed, the aforesaid witnesses returned before the Grand Jury.  Each witness asserted that he was ready and willing to submit himself to oral questioning, but emphatically refused to fill in answers to the questions listed in the aforesaid questionnaire.

As the result of the said refusal, Malcolm L. Cole, foreman of the said Grand Jury, appeared before this court on June 1, 1955, with an assistant district attorney, and through the assistant district attorney, informed the court of the above developments and specifically requested the court to order said six witnesses to fill in the answers contained in the questionnaire and return with same to a subsequent Grand Jury session.

Therefore, the question is presented for determination by this court as to whether the Grand Jury has the power to direct a witness to fill out the instant questionnaire away from the Grand Jury and submit it at a later session, as part of his sworn testimony.

At this point it is important to note that this court is not being asked to pass upon the power of the State, as an employer, through a duly authorized representative, to direct the answering of such a questionnaire by these witnesses, as the State's

employees. Hence, in the determination of the particular issue raised by these proceedings, the court does not intend in any way that the conclusion reached by the court should affect the State in any rights it may have in questioning its employees.

Strange as it may seem, the fact is that, despite industrious research on the part of counsel and the court, no case has been found which has considered the specific question here presented.

The District Attorney argues, and the court agrees, that the Grand Jury, although an arm of the court, has completely independent powers to investigate into the willful and corrupt misconduct in office of public officers of every description.

The District Attorney then goes on to argue further that there are no well-defined limitations imposed by any law with respect to the methods which a grand jury may employ in conducting an investigation properly before it and, therefore, it may investigate by questionnaire if it so desires. In support of his contention that there are no limitations as to methods he cites the case of *Application of Texas Co.* (27 F. Supp. 847). However, while the language of the last-cited case would seem to give some support to this contention, the fact is that in that case the Federal court was discussing the grand jury system under the Federal law and not the grand jury system under the laws of the State of New York. The grand jury, as used in the Federal courts, has only such powers as are given to it by construing the Federal law under which the jury is set up. Reference to the grand jury in the Federal Constitution and statutes is to a grand jury having powers of a grand jury as known at common law. (*United States* v. *Warren,* 26 F. Supp. 333; *United States* v. *Smyth,* 104 F. Supp. 309.)

In the State of New York the formation, functioning, powers and limitations of a grand jury are regulated by legislative enactment, as found in the Code of Criminal Procedure (§§ 223–272). It is to these sections and the decisions construing them to which one must go in order to find the answer to the question presented by the case at bar.

The code provides that a grand jury, in investigating a charge, can receive only such evidence as is given by witnesses produced and sworn before them, or furnished by legal documentary evidence, or by the deposition of a witness in certain cases. In short, the grand jury can receive none but legal evidence. (Code Crim. Pro., §§ 255, 256.)

It has been well established in this State that evidence received before a grand jury must be competent legal evidence, such as is legal and proper before a petit jury, on the theory that the

rules which govern a trial also govern the proceedings before the grand jury. (*People* v. *Budzinski,* 159 Misc. 566.)

In the case of *People* v. *Brinkman* (205 Misc. 337, revd. on other grounds, 286 App. Div. 889) the court said (p. 340): '' it may receive only legal evidence &ast; &ast; &ast; in the form of sworn testimony and legal documents &ast; &ast; &ast; so that the individual grand juror's knowledge may only be acted upon by the body when offered to it through his sworn testimony &ast; &ast; &ast; It follows that there can be no lawful substitute for the actual hearing by each and every grand juror of the evidence adduced under the sanction of an oath or its equivalent.'' Again, on page 341, there is the following: '' The statutory language seems unequivocal in requiring that a grand juror's action in voting to indict must be based upon his personal hearing and evaluation of all of the evidence. Any effort to interpret that language as meaning something less than what is so plainly prescribed is discouraged by a review of the evolution of the present system.''

While a grand jury has power to fix its own methods of procedure, so far as they are discretionary, it may choose only those methods which do not violate established law. (*People* v. *Blair,* 33 N. Y. S. 2d 183.) Also see *People* v. *Goldenberg* (110 Misc. 556, 564) where the court said: '' We are aware that members of the grand jury at times of their own motion ask incompetent questions. It is the duty of the district attorney, under such circumstances, to explain to the jury that the law expressly prohibits the introduction of illegal evidence ''.

In the case of *Matter of Osborne* (68 Misc. 597, 601) the court said: '' Thus the law, plainly expressed, is that a grand jury can act only in the manner prescribed by law ''. And, again, the court said (p. 604): '' The powers and duties of a grand jury are defined by law. No matter how respectable or eminent citizens may be who comprise the grand jury, they are not above the law, and the people have not delegated to them arbitrary or plenary powers to do that, under an ancient form, which they have not a legal right to do.''

The nearest precedent to the factual situation presented in the case at bar is to be found in *Matter of Steingut* v. *Imrie* (270 App. Div. 34). In that case the witness was handed a list of questions and required to answer each, and to furnish detailed schedules of information relating to receipts, disbursements and activities of himself, his wife and members of their families over a period of ten years. He answered questions but did not compile the required details of information. The lower court

adjudged the witness guilty of contempt, but the order of contempt was reversed. In reversing, the court said (p. 48): "Merely that petitioner was un-co-operative either before the Grand Jury or in preparation outside for further questioning, this in and by itself cannot constitute the offense. There must have been a willful refusal to answer to the extent of his knowledge — to tell what he knew — in reply to legal and proper questions." Although the question did not arise in *Matter of Steingut* v. *Imrie* (*supra*) in the same manner in which it does in the case at bar, certainly the inference is clear that, if the witness was not guilty of contempt for failure to compile the required details of information given to him by the Grand Jury, then it must follow that the Grand Jury had no legal right to ask him to do so in the first place. To this latter extent the case is an authority in support of the contention of the witnesses in this proceeding.

The District Attorney has cited the case of *People* v. *Ching Hing Chang* (74 Cal. 389) as authority supporting his position. The fact is that, in examining the case of Ching Hing Chang (*supra*) there is found language (p. 395) which supports the position taken by the witnesses in this proceeding and that language is the following: "It is the duty of a court to compel a witness to answer a proper question. But we are not acquainted with any law which makes it the duty of the court to compel a witness to procure the information necessary to answer it."

In the case at bar the questionnaire under consideration is, to say the least, a very complicated one. To properly understand its nature it might be helpful to cite the language used by the District Attorney in his principal memorandum of law in support of his position at page 8, where he says: "In the instant case answers requested are numerous, complicated and very difficult to commit to memory, thus making it virtually impossible for the witness to attain a reasonable degree of accuracy in reporting to the Grand Jury the ascertained facts without writing them as he established them." This language sufficiently describes the nature of the questionnaire, without referring to any of its questions. However, it might be helpful to state that the questionnaire consists of twenty-six pages, each longer than the usual legal foolscap, and containing sixty-eight questions, with many of these questions having a great number of subdivisions and some of these subdivisions themselves again subdivided, and they cover not only the activities of the witness, but of his wife, children or other dependents over a period of

six years. The court thinks it is fair to state that, conceivably, some people would find it difficult indeed to furnish the answers to the questions without outside assistance of a professional nature, such as accountants, depending, of course, upon the particular activities in which the witness has engaged in the six years covered by the questionnaire.

The court firmly believes that the grand jury is without power to tell a member of the community to go out and do a great deal of work for the purpose of properly ascertaining the details called for by the questions and then to report the result of his labors in writing to it. That is not the obligation of a witness called by the grand jury, as this court understands it. The grand jury has the power to command the appearance of a witness and swear the witness and to direct that he answer orally all relevant questions put to him in the presence of the grand jury. It has no power to direct a witness summoned before it to perform acts such as are called for by the answers expected by this questionnaire.

A final argument advanced by the District Attorney is to the effect that, even though the law may be silent with reference to the power of the grand jury to direct the filling in of a questionnaire, this court should boldly hold that such power is implied in the general nature of the duties performed by the grand jury, that such a holding would be consistent with morals, justice and expediency and inure to the benefit of the community. In this connection, rather than employ the court's own language to deal with this thought, it believes that the answer to the District Attorney's position is eloquently expressed in the language of Chief Judge CARDOZO in *Matter of Doyle* (257 N. Y. 244, 268) where he said: '' We are not unmindful of the public interests, of the insistent hope and need that the ways of bribers and corruptionists shall be exposed to an indignant world. Commanding as those interests are, they do not supply us with a license to palter with the truth or to twist what has been written in the statutes into something else that we should like to see. Historic liberties and privileges are not to bend from day to day ' because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment ' (HOLMES, J., in *Northern Securities Co.* v. *United States,* 193 U. S. 197, 400), are not to change their form and content in response to the ' hydraulic pressure ' (HOLMES, J., *supra*) exerted by great causes. A community whose judges would be willing to give it whatever law might gratify the impulse of the moment would find in the end that it had paid too high a price

for relieving itself of the bother of awaiting a session of the Legislature and the enactment of a statute in accordance with established forms.''

The Grand Jury is not helpless in its efforts to secure the information which it desires. There are well established legal and time-honored methods which it may employ to reach the same end which it seeks to reach by the questionnaire method. If it is the thought of the People of this State that a grand jury should have the power to compel any witness before it to perform such acts as the grand jury believes will best help it in the investigation of the matter before it, then the People must speak through the Legislature. This court is powerless in the matter.

Therefore, the application of the Third Grand Jury for the May, 1955, term for a direction by this court to the witnesses ordering them to fill in the answers to the questions contained in the questionnaire is denied.