William E. Ringel, P. J.
The defendants are each charged with violation of subdivision 6 of section 600 of the Penal Law (criminal contempt), as a misdemeanor.
They appeared before the Second August 1964 Grand Jury, pursuant to subpoena, were sworn, and refused to answer certain
*665 questions,* after immunity had been conferred. This Grand Jury had been impaneled for the purpose of determining if a conspiracy existed to instigate the Harlem riots of July, 1964, and to inquire into acts relating thereto. Anderson executed a limited waiver of immunity, not pertinent here. Douglas alone *666 was advised as to the purpose of the inquiry. The defendants were tried separately -on informations ordered filed by the Grand Jury. However, we decide each case in one opinion on the grounds common to all.
The defenses- interposed (see numbered headings, infra) will be treated seriatim.
1. Prosecution for a violation of Penal Law subdivision 6 of section 600 may only be had by indictment (e.g., Penal Law, § 602).
We do not read section 602 of the Penal Law as mandating prosecutions thereunder by indictment only. An information charging contempt as a misdemeanor is authorized (People ex rel. Franh v. McCann, 253 N. Y. 221), This court has jurisdiction to try this offense (N. Y. City Crim. Ct, Act, §§ 31, 33, subd. [10]).
2. “To incite to riot” is not a crime in this State. The investigation is therefore a nullity.
The informations herein charge that the Grand Jury was conducting “an investigation to determine whether violations of the Penal Law relating to conspiracy to incite to riot occurred.” If the Grand Jury were investigating a nonexistent crime, this objection would be well taken (Matter of Wood v. Hughes, 11 A D 2d 893; Code Crim. Pro., § 245). The language used in the informations, reasonably construed, lends itself to no such interpretation. The word “ incite ” means “ instigate ” (Black’s Law Dictionary [4th ed., 19-51], p. 905): it means “ to urge on; stimulate or prompt to act” (American College Dictionary). Words must be accorded their natural and obvious meaning (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, §§ 94, 232; Matter of Young v. Cerosa, 11 A D 2d 67). The subject of the Grand Jury inquiry was whether a conspiracy existed to instigate or stimulate a riot and to determine if violations of the Penal Law occurred relating thereto.
It might be added that conspiracy to -commit a crime constitutes a separate and independent crime (People v, Cadle, 202 Misc. 415). It does not merge into the actual commission of the crime (People ex rel. Thornton v. Becker, 188 Misc. 181). It is clear from the record that the Grand Jury inquiry concerned itself with two separate crimes, conspiracy and riot. An inquiry into the crimes of conspiracy and riot were proper subjects of the Grand Jury’s investigation (Penal Law, §§ 580. 2090, 2091).
*667 3. The questions ashed were not legal and proper *
A “ legal ” question is one “ required or permitted by law ” (Black’s Law Dictionary [4th ed.]). A “ proper ” question is one that is “ fit, suitable or appropriate” (Black’s Law Dictionary, ibid). In any legal proceeding a determination of what is a legal and proper question will depend on the issues involved or likely to become involved (Van Dyke v. Doughty, 174 Mich. 351). The purpose of a Grand Jury inquiry is to ferret out facts which will enable it to determine whether formal charges should be made against someone. It is not the purpose of a Grand Jury to try offenders (United States v. McGovern, 60 F. 2d 880).
Though illegal evidence may not be the basis for a Grand Jury indictment or information (Matter of Cole [Reiss], 208 Misc. 697), wide latitude and scope must be afforded a Grand Jury in propounding its questions to witnesses. The purpose of a particular Grand Jury inquiry, by the very nature of its secrecy (Code Crim. Pro., § 258), lies peculiarly within the knowledge of that body. As the investigation proceeds, leads may be developed which will enable it to discover the truth. The competency, relevancy and materiality of questions propounded are not the concern of a witness (United States v. McGovern, supra), though they may be the concern of a defendant.
Though no specific case in point has come to the court’s attention relative to what constitutes a legal and proper question that may be asked of a Grand Jury witness, there are some cases that indicate how broad such interrogations may be. In People ex rel. Sillifant v. Sheriff (6 N Y 2d 487), the court sustained a Grand Jury in its power to require the petitioner to complete a questionnaire as to the financial status, not only of himself, but also that of -all members of his household. (See, also, People v. “ John Doe ” [Byk], 247 App. Div. 324.)
On the other hand, in Matter of Nelson v. Hand (23 Misc 2d 1077), the court in a similar situation refused to direct answers to questions that were ambiguous.
We conclude therefore that a question asked of a witness before a Grand Jury, duly impaneled, conducting an inquiry to determine if a crime has been committed, where such witness has waived or duly received immunity in a case where such immunity may be lawfully conferred, is a legal and proper question if it relates generally, though broadly, to the subject matter of the inquiry and providing further that the question *668 is clear and unambiguous. (People v. John Doe” [Byk], supra.) What constitutes a legal and proper question is a question of fact (People v. Amarante, 100 N. Y. S. 2d 677).
Even if “it is [requested] to scrutinize with acute legalism the propriety or relevance of the subject of inquiry of a witness ” before a Grand Jury (People v. “ John Doe” [Byk], supra, p. 326), we hold that the questions asked were legal and proper. They were probative of the investigation. They were asked in order to obtain evidence which would have an effective influence and would logically tend to prove or disprove the existence of the crimes under investigation. We except from this determination only the question put to McAdoo, which is the basis of the first count of the information filed against him. That question is not legal and proper by reason of its ambiguity.
4. Failure to advise the defendants of the purpose of the Grand Jury investigation precludes a prosecution for contempt.
We find no authority for this contention. The cases hold to the contrary (United States v. McGovern, supra', People v. “ John Doe ” [Byk], supra). The authorities cited by defendants are not applicable (Watkins v. United States, 354 U. S. 178; Deutch v. United States, 367 U. S. 456; Russell v. United States, 369 U. S. 749).
These cases deal with Congressional investigating committees authorized under a Federal statute (U. S. Code, tit. 2, § 192) by which, Congressional jurisdiction of an inquiry, disclosure of the subject matter of the inquiry and pertinency of the questions to such subject matter are specifically required.
The case of Malloy v. Hogan (378 U. S. 1), also cited, is likewise not in point. Malloy who appeared as a witness in a statutory inquiry had not received full immunity (Hoffman v. United States, 341 U. S. 479; People ex rel. Taylor v. Forbes, 143 N. Y. 219).
It must be borne in mind that Grand Jury inquiries are secret (Code Crim. Pro., § 258). This secrecy has been zealously guarded both at common law and under statutes (People v. Dunbar Contr. Co., 82 Misc. 174). There are cogent reasons behind this policy of secrecy. They are aimed at preventing an accused from escaping before he is indicted, from tampering with witnesses, and protecting an accused person who is not indicted, from unwarranted exposure (8 Wigmore, Evidence [3d ed.], § 2360).
To compel a Grand Jury to divulge the purpose of its investigation to a witness who incidentally is not sworn to secrecy (People v. Naughton, 38 How. Prac. 430), would defeat this policy and render nugatory many Grand Jury investigations.
*669 5. Compulsive testimony of a witness before a Grand Jury is violative of the Fifth Amendment.
Defendants urge that testimony they were required to give this Grand Jury might be used against them in a Federal prosecution. They cite Murphy v. Waterfront Comm. (378 U. S. 52) as authority.
'This case specifically held that as to compelled testimony given by an immunized witness in a State proceeding, the Federal Government is precluded from using such testimony or its fruits, in any criminal prosecution of that witness. (See, also, United States v. Interborough Delicatessen Dealers Assn., 235 F. Supp. 230.)
Defendants also cited People v. De Feo (308 N. Y. 595). This case is likewise no authority for their position. Full immunity had not been conferred on De Feo. (Matter of Grand Jury [Cioffi], 10 A D 2d 425, affd. 8 N Y 2d 220.)
6. Questions relative to the printing of posters were violative of the First Amendment.
The posters in question described the manufacture and use of Molotov cocktails, a highly explosive instrument. It is sufficient to say in this regard that the Constitution does not protect speech or press which instigates riot (Harisiades v. Shaughnessy, 342 U. S. 580; Dennis v. United States, 341 U. S. 494).
Sections 584 and 2097 of the Penal Law authorize the granting of immunity by a Grand Jury in its investigation of conspiracy and riot. Such immunity was duly conferred on each defendant. The procedural requirements set forth in section 2447 of the Penal Law, were, according to the evidence, fully adhered to. Failure of the defendants to answer the question propounded under these circumstances was contumacious and willful. We find also that such refusals were accompanied with the intent to impede the investigation and to interfere with the administration of justice. Such willful acts of the defendants, committed after immunity had been conferred, constitute violations of subdivision 6 of 'section 600 of the Penal Law. (Matter of Ushkowitz v. Helfand, 15 N Y 2d 713; Matter of Di Biasi v. Schweitzer, 22 A D 2d 684; People v. Franzese, 24 Misc 2d 355; People v. John Doe [Berger], N. Y. L. J., Feb. 15, 1965, p. 17, col. 2.)
Excepting the first count (McAdoo), supra, each defendant is found guilty of each count in the respective informations.
Concur: Kbeu and Matzkih, JJ.

 WILLIAM MCADOO FIRST count:
Q. Mr. MeAdoo, when did you become a member of the Labor Movement, if you did become a member of the Labor Movement? second count:
Q. Mr. MeAdoo, during the July riots in New York County, were you present at the offices of the Progressive Labor Movement, on Lenox Avenue and did you at that time demonstrate how a Molotov cocktail is made? third count:
Q. Mr. MeAdoo, I show you Grand Jury Exhibit No. 15, which is a leaflet which says:
Harlem Freedom Fighters How to make a Molotov cocktail.
I ask you whether you have ever seen that document before? fourth count:
Q. During the July riots in New York County did you and William Epton agree to incite further riots?
DAVID DOUGLAS FIRST COUNT:
Q. Mr. Douglas, did you agree and conspire with William Epton to incite further rioting in New York County during July of this year? third count:
Q. Subsequent to your appearance here, have you discussed your testimony with other members of the Progressive Labor Movement, namely William Epton, William Anderson, Abraham Hart, Harold Young?
VIVIAN ANDERSON SECOND count:
Q. Did you and William Epton agree to incite further riots in New York County in January of this year? third count:
Q. Were you present in the office of the Progressive Labor Movement in July of this year with William Epton and discussed with him and another individual the possession of forty Molotov cocktails?
FOURTH COUNT:
Q. Did you hear William Epton discuss the purchase of firearms for use at the Progressive Labor Movement?
NATHANIEL BARNETT FIRST COUNT:
Q. Mr. Barnett, where were you during the riots here in New York City in July of this year?
MICHAEL CRENOVICH FIRST count:
Q. Are you a member of the Progressive Labor Movement? third count:
Q. Who else do you know at the Harlem Defense Council?

 See footnote on p. 665.