Oscar Murov, J.
This is an application by the petitioner, Eugene R. Kelley, Police Commissioner of Suffolk County, (1) for an order pursuant to section 701 of the County Law disqualifying the District Attorney and Assistant District Attorneys serving under him from taking further action upon a matter concerning the petitioner pending before the July, 1975 Holdover Grand Jury and appointing a Special District Attorney to continue the inquiry. The petitioner requests also (2) that the said Grand Jury proceedings be conducted in the presence of the court and (3) that further instructions respecting the duties of said Grand Jury and matters before it concerning the petitioner be given by the court to said Grand Jury and (4) that a directive from the foreman of the Grand Jury that a petitioner complete and submit to a certain financial questionnaire be declared null and void and of no legal effect.
The matter was brought on by an order to show cause signed by the Honorable Melvyn Tannenbaum which was subsequently modified by an order of Mr. Justice Shapiro, an Associate Justice of the Appellate Division in the Second Department, vacating directives therein calling for closed sessions and restraining the District Attorney and his agents from presenting further evidence to the Grand Jury pending the hearing of the motion.
The District Attorney has revealed in his opposing papers his intention to present particulars of the nature of the Grand Jury investigations for the purpose of demonstrating the relevancy of evidence sought in the financial questionnaire. This court, in the interest of preserving the cloak of secrecy surrounding the Grand Jury proceeding (CPL 190.25, subd 4) has directed that only the portion of this proceeding relating to said financial questionnaire be held in camera and, consonant with the Appellate Division order, that the remainder of the proceeding be conducted in open court.
At the hearing, attorneys for the parties orally argued substantially the same arguments made in the moving and opposing papers, but the only evidence offered other than blow-ups of photocopies already presented in the moving papers, were additional photocopies of substantially identical character. Accordingly, the decision herein is largely respon *778 sive, but not limited, to the arguments presented in the moving and opposing papers.

I

The court first considers the application for the appointment of an attorney from within the county to act as Special District Attorney in the prosecution of this particular matter. A careful examination of section 701 of the County Law, under which petitioner moves, clearly establishes that such may be done by a superior criminal court in the county where the action is triable "Whenever the district attorney of any county and his assistant, if he has one, - shall not be in attendance at a term of any court of record, which he is by law required to attend, or is disqualified from acting in a particular case to discharge his duties”.
The 1974 amendment to the instant section (L 1974, ch 456, § 1, eff May 23, 1974) makes changes that, inter alia, substitute "a superior criminal court” for "the court”. A superior criminal court is neither defined by the County Law nor the Criminal Procedure Law, but the County Court which is classified as a superior court (CPL 1Ó.10, subd 2, par [b]), with trial and preliminary jurisdiction of all offenses, CPL 10.20, is deemed here to fall within the meaning of the term "superior criminal court” and authorized to act under circumstances described in the statute.
It is the petitioner’s contention that the District Attorney and his staff should be disqualified because of the District Attorney’s involvement in the center of an explosive controversy in Suffolk County affecting himself and the petitioner as opposing protagonists.
Five cases are cited by petitioner in support of this proposition. (People v Krstovich, 72 Misc 2d 90; People v Rupp, 75 Misc 2d 683; People v Ferdinando, 40 AD2d 714; People v Loewinger, 37 AD2d 675; People v Schrager, 74 Misc 2d 833.) It should not be disputed that the cases are in general harmony with the obvious meaning of the statute providing for the appointment of a Special District Attorney wherever it is shown that the District Attorney is disqualified to act in a particular case.
In Krstovich, the District Attorney was clearly disqualified to act as a matter of law because he was the victim of the crime charged in the indictment. The court, in Ferdinando, *779 denied the defendant’s motion to remove the prosecutor asserting that the power to supersede a duly elected District Attorney resided solely in the Governor but added its dictum acknowledging the power of the trial court to appoint a Special District Attorney where it is shown that a District Attorney is disqualified to act in a particular case. Rupp was in general accord with this view but the court, acting under section 701 prior to the effective date of present amending language, observed that such an appointment must not extend beyond the adjournment of the term at which made. Loewinger does not aid the petitioner’s cause at all for there it was held that no conflict of interest resulting in prejudice to the defendant was observable merely because the Chief Assistant District Attorney had once represented the defendant on a traffic charge related to the incident in issue. And finally, in Schrager, the District Attorney’s motion to disqualify himself was granted upon a showing that the defendant, an Assistant District Attorney, shared personal and professional relationships with members of the District Attorney’s staff.
Regrettably, however, none of the cited cases involve a fact pattern such as is present herein, i.e., that of a prosecutor embroiled in legal conflict with the witness in a civil matter distinct from the purpose of the Grand Jury investigation and fraught with political overtones, or undertones, as the case may be. Does such a condition constitute a conflict of interest on the part of the prosecutor sufficient to warrant his disqualification by order of the court? The question is answered in decisions rendered in other jurisdictions and summarized in 31 ALR3d 953: "the existence of an apparently intense and antagonistic political rivalry between a prosecuting attorney and the accused which, in the light of human experience, presumably involved more than a passing acquaintance between those concerned, was held insufficient to disqualify the prosecutor” (p 980). The article, however, also reports that a court could not be said to have erred in granting a prosecutor’s application for disqualification where the prosecutor sought to disqualify himself to try a criminal action against a defendant because of the pendency of a civil action brought against him by the defendant (p 982).
Perhaps it would be appropriate for the District Attorney to move to recuse himself to dispel any suggestion of unfairness, a "conflict of interest or the appearance of a conflict.” (People v Krstovich, 72 Misc 2d 90, 94, supra.) However, in the *780 absence of a showing by the moving party of the existence of a conflict of interest demonstrating the prosecutor is disqualified as a matter of law, the court refuses to disqualify him and to invoke its statutory authority under the County Law. A District Attorney cannot be recused or recuse himself on any ground other than that prescribed by law.
The witness has raised the question of disqualification and cannot now be deemed to have waived the issue. If he is subsequently indicted and convicted, he may yet thereafter win a reversal on an assignment of error based upon the disqualification of the prosecutor, or his assistant (31 ALR3d 953, 959).
Therefore, it is the decision of the court that petitioner’s application for the appointment by the court of a Special District Attorney to continue the Grand Jury presentation is denied.
The court is presently aware of media reports indicating that the Governor of the State of New York is in the process of appointing a special prosecutor to supersede the District Attorney. Should such prove to be the case, then the decision herein respecting this branch of the application will, of course, be rendered moot.

II

The branch of the petition requesting that the Grand Jury proceeding be continued in the presence of the court is denied. The petitioner has not shown, nor has the court uncovered by its own exhaustive research, any authority to supplant the limiting provisions of CPL 190.25 identifying the persons who may be present during voting, deliberations, or other proceedings of the Grand Jury. "The theory of a grand jury investigation is that it should be made independently and uninfluenced by the court. It is required by law to retire to a private room * * * Primarily the district attorney is made its legal adviser and the law carefully prescribes who may be present at its sessions, and the judge is not one of them.” (Matter of DeFazio v Oneida County Ct., 140 Misc 2d 487, 495, affd 236 App Div 822.)

III

The remaining questions relate to the application for an order quashing the information questionnaires the witness has *781 been directed to submit and whether the Grand Jury will be further instructed by the court respecting its duties and matters concerning the petitioner. Because both issues are so intertwined they will be treated simultaneously in this portion of the court’s decision.
The questionnaires were given to the petitioner by Assistant District Attorney Wolfe just before the conclusion of the session conducted on August 27, 1975, with the following oral instructions: "Q. Commissioner, at this time I’m going to hand you Grand Jury Exhibits 34 and 34A for Identification. These are financial questionnaires. The reason I’m giving you two, they’re identical but in most columns on most pages where there are columns, they are columns which only cover you three years. We ask you that they be filled out for the past six years. The year of ’75 up to date, the years ’74, ’73, ’72 and ’71 and 1970, and that these be brought back to the Grand Jury with all the required supporting documents on your next appearance before this Grand Jury.”
One of the grand jurors wondered if the petitioner could be made to comply upon the concurrence with the demand by the foreman alone or if a vote was necessary. He, or another, also expressed some concern that the financial questionnaire proffered to the commissioner was in the nature of an "inquisition”. The jurors were advised by Assistant District Attorney Clayton that they were at liberty to seek a ruling from the court. The court was never approached for a ruling upon these issues and the concerns of the juror, or jurors as the case may be, were laid to rest when Clayton advised them that the witness would be afforded a remedy if he, Clayton, incorrectly advised the jury.
CPL 190.25 (subd 6) provides as follows: "6. The legal advisors of the grand jury are the court and the district attorney, and the grand jury may not seek or receive legal advice from any other source. Where necessary or appropriate, the court or the district attorney, or both, must instruct the grand jury concerning the law with respect to its duties or any matter before it, and such instructions must be recorded in the minutes.”
In this respect, it is the function of the District Attorney to guide the Grand Jury as to the law and the weight of evidence. He may place the evidence before the jury, sum it up, charge the jury as to the law, and even ask for an indictment, but he may not dominate the jurors or control its findings. *782 The District Attorney must refrain from the slightest coercion (United States v Rintelen, 235 F 787). Any violation of this rule accompanied by prejudice to the defendant should give rise to grounds for a motion to dismiss a resulting indictment pursuant to CPL 210.35 (subd 5).
"It is the duty of the court to charge the grand jury originally with respect to their duties and to advise them when requested.” (People ex rel. Childs v Knott, 187 App Div 604, 621, affd 228 NY 608.) No further instructions have as yet been requested of the court and the court stands ready to honor such a request from the jury at any time such further instructions are required. The court regards it as neither necessary nor appropriate that further instructions concerning the law with respect to the duties of the Grand Jury nor the matter before it be given at this time. Accordingly, petitioner’s motion, therefore, is denied.
The sole remaining question then is, "Shall the financial questionnaire be quashed as unduly burdensome and/or irrelevant to the matters pending before the grand jury?”
Clearly the Grand Jury has it within its power to direct a witness to fill out and submit a reasonable questionnaire. (People ex rel. Sillifant v Sheriff of City of N. Y., 6 NY2d 487.) The questionnaire the court found the jury might reasonably expect the defendant Sillifant to complete consisted of four pages. The questions were "simple ones asking for details of the income of relator and members of his household, the names of banks in which he and his family have accounts, the existence of safe-deposit boxes, life insurance and other policies, stock brokerage accounts and of his charge accounts, if any. The questionnaire calls for approximate figures of living and personal expenses and for relator’s financial balance sheet. No special skill or assistance is necessary for the answering of such questions but they are the sort that a person would not ordinarily be able to answer from unaided memory.”
The instant questionnaire may very well have been drafted with a design to fall within the guidelines of the patently reasonable Sillifant questionnaire. It asks successively for details of the witness’ income (Question 5), the wife’s income (Question 6), life insurance and other policies (Question 11), bank accounts of the witness and family members (Question 12), safety deposit boxes (Question 13), stock brokerage accounts and securities traded by the witness (Question 14), *783 charge accounts (Question 18) and directs that the witness provide schedules of expenses (Schedule A) and financial balance sheet (Schedule B).
It must be remembered that the figures to be provided by the witness must date back through the past six years. Certain of the questions are subdivided and call for entries for each of the last six years as to each part. To illustrate, if the witness had income from any other than his regular employment, he would be required to provide answers as to each source of income for the period in question. As an attorney who engaged in the part-time practice of law, the witness would potentially be required to provide 12 responses to Question 5. Six potentially additional answers would be required for each of any other sources of income the witness may have possessed. A potential for proliferated answers lies in Questions 11,12 and 14.
In addition to the foregoing, the questionnaire poses the following questions foreign to the afore-mentioned Sillifant guidelines:
7. Costs associated with children’s education
8. Costs of the support of dependents
9. Contributions received to support of the household
10. Details of all transactions in real estate, whether or not in the name of the witness or his wife and dependents
15. Loans made or money borrowed
16. Automobiles owned by the witness, wife or dependents
17. All items of personal property purchased where the price exceeded $100
19. All property disposed of
Answers to all of these questions are likewise required to relate back six years.
The schedules thrust upon the witness are similarly extravagant in their demands. They require reports for the past six years on 60 specific items including but not limited to annual expenditures for recreation, gifts, hobbies, everyday expenses (tobacco, newspapers, carfare, liquor, etc.), personal care (cosmetics, laundry, tailor) luxury items, personal loan repayments; the amount of cash on hand at the beginning of each of the years; loans payable and other liabilities.
It should come as no surprise that the court regards this demand as unreasonable and unduly burdensome. The court *784 would be hard pressed to report how much cash it had on hand on any day last week or how many concerts it attended in 1971 (were that the only form of recreation in which the court indulged).
The questionnaire herein is not too unlike the one struck down in Matter of Cole (208 Misc 697) and adverted to in Sillifant (supra). Although fewer in number of pages than the Cole questionnaire, the instant document may be similarly described. The Cole questionnaire is described as follows (pp 701-702): "the questionnaire consists of twenty-six pages, each longer than the usual legal foolscap, and containing sixty-eight questions, with many of these questions having a great number of subdivisions and some of these subdivisions themselves again subdivided, and they cover not only the activities of the witness, but of his wife, children or other dependents over a period of six years.” No pretense is here made that the documents in both cases are equally oppressive. Nevertheless, it is the opinion of this court that the questionnaire challenged herein is itself unduly burdensome. It can readily be seen that the information required of the witness cannot be obtained by him without extensive labor on the part of the witness. It is not unlikely that the witness would be required to seek outside professional assistance in collating his information.
In view of the foregoing, it is the decision of the court that petitioner’s application for an order vacating the Grand Jury directive for the petitioner to complete and submit the subject financial questionnaire is granted. (People ex rel. Sillifant v Sheriff of City of N.Y., 6 NY2d 487, 488, 489, supra.)
The court has read and considered the following papers, including the order to show cause executed by Hon. Melvyn Tannenbaum, affidavits of the petitioner and counsel for petitioner in support of the application, defense exhibits numbered 1, 2 and 3, the order of Hon. J. Irwin Shapiro modifying Judge Tannenbaum’s order, the affidavit of the District Attorney in opposition, and transcripts of the minutes of the Grand Jury proceeding. Therefore, in accordance with CPLR 2219 the decision herein shall constitute the order of the court and no further order need be submitted.